# WILLIAM J. VANNORT

## *vs.*

# THE COMMISSIONERS OF CHESTERTOWN,
### A BODY CORPORATE.

*Municipalities:* *sidewalks; negligence; defects; notice; duty of pedestrians; lanterns.*

In a suit against a municipality for injury caused from the alleged negligence in allowing a sidewalk to be and remain in a dangerous condition, the fact that the plaintiff did not carry a lighted lantern in going two and a half squares early in the evening along one of the most frequented streets of the town, is not evidence of contributory negligence. p. 689

Nor is it any defense to such an action that the plaintiff might have traveled along other streets that were in good repair. p. 689

Although the plaintiff had known of the dangerous condition of the sidewalk at one time, the fact that he thought that it had been since repaired, is evidence to go to the jury to rebut the defense of contributory negligence. p. 691

In such actions prayers of the plaintiff are erroneous, unless they submit to the jury the question of whether the defendants had real or constructive notice of the defect in the sidewalk. p. 691

*Decided April 26th, 1918.*

Appeal from the Circuit Court for Queen Anne's County. (CONSTABLE, C. J., ADKINS and HOPPER, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, URNER and STOCKBRIDGE, JJ.

*S. Scott Beck* and *William W. Beck* (with whom was *Thomas J. Keating* on the brief), for the appellant.

*John D. Urie,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is a suit to recover damages for injuries sustained by the appellant (plaintiff) by reason of the alleged negligence on the part of the defendant (appellee) in permitting a sidewalk in Chestertown to be out of repair and in an unsafe condition. The Court rejected four prayers offered by the plaintiff and granted the defendant's first prayer, which instructed the jury that "there is no evidence in this case legally sufficient to entitle the plaintiff to recover and their verdict must be for the defendant." This is an appeal from a judgment entered on a verdict rendered in accordance with that instruction, and the only exception taken was to the granting of that prayer, and to the rejection of the plaintiff's prayers.

The plaintiff was eighty-one years of age at the time of the accident. About 7:30 o'clock on the evening of December 13, 1916, he was going from his home in Chestertown to the post office, and stepped in a hole in the sidewalk on Queen street, which caused him to fall, resulting in the injuries complained of. The pavement had been dug up for the purpose of laying a pipe to a property abutting on the sidewalk, and the earth had been put back in the place excavated, but the bricks had not been relaid, and the ground had apparently sunk. The plaintiff claimed that it had been in the condi-

tion complained of for several weeks—the witnesses differing as to the precise time, but most of them saying three or four weeks. In bad weather it became muddy and someone had placed a few bricks in it for pedestrians to step on. The excavation was made through the entire width of the sidewalk, was from two and a half to three feet wide and was several inches deep near the bricks, getting somewhat deeper towards the center. Several witnesses testified that it was a dangerous place. A bricklayer, who was employed by the contractor to replace the bricks after the pipe had been laid and the hole filled, gave as his reason for not having done so that the winter weather had interfered. He said that he measured the space the following spring and the depth at the deepest point was about two inches, but he did not see it during the winter, and there was evidence that it had been filled up after the accident to the plaintiff. It had snowed some the day of the accident and it was a stormy, dark night. The electric lights on that street were not burning, and there was no light except such as came from the houses. The plaintiff testified that: "This opening was covered with snow. It was soft and mushy. I trod on it, and when I found myself I was thrown on my face on the pavemnt partly unconscious." In another place he said that he supposed his foot slipped and he fell. He laid on the pavement sometime and, to use his language, "I scrambled up and steadied myself and walked to the doctor."

We will first consider the defendant's prayer. It does not in terms instruct the jury that the plaintiff was not entitled to recover by reason of his contributory negligence, but that is what was relied on at the argument. It could not have been granted on the ground that there was no legally sufficient evidence of negligence on the part of the defendant, for the defect was such that, if the defendant knew, or by the exercise of ordinary care could have known of it in time to have remedied it before the accident, the municipality was liable, *Keen* v. *Havre de Grace,* 93 Md. 34—unless the plaintiff was guilty of contributory negligence. The appellee con-

tends that the admission by the plaintiff when on the stand that he had known for two or three weeks that the hole was there, and that he stopped using that side of the street a week or ten days before the accident because he thought it was dangerous, when taken in connection with the age and physical condition of the plaintiff, the character of the night, and the fact that the evidence shows that he could easily have avoided the place where the injury occurred, either by taking another route or crossing over to the opposite side of Queen street, was sufficient to preclude a recovery, on the ground of contributory negligence. But while he was an old man and had received a wound during the Civil War and was injured in a collision between an automobile and a vehicle in which he was riding, his testimony shows that his sight was reasonably good before the accident, and he was apparently quite active for one of his age. He lived on the corner of Maple and Water streets. In going to the post office he could either go a square on Water street to High street, and then on High (crossing Queen street) to the post office (which was on High street) or he could go a square on Maple to Queen and then a square on Queen to High, and from there to the post office. He could have either crossed over to the North side of Queen or go on the south side from Maple to High, which he started to do. Upon being asked why he did not either cross to the north side of Queen street or use the other route on Water to High, etc., he testified that he supposed that the Commissioners had by that time done their duty and repaired the sidewalk. This appears in his cross-examination: "Q. Why with this dark stormy night should you go on the only pavement that you say was dangerous that night? A. I didn't say it was dangerous that night. I say this: That I was under the impression that with three town commissioners sworn to do their duty that place was filled up. That was my belief, that that hole was filled up and it was not dangerous then. Q. Why did you pick out a dark night, when you couldn't see, to find that out? A. I didn't pick it out; going up there might be a force of habit. Q.

You got in the habit of going up that street? A. Sometimes I did. Q. A little while ago you said you quit going up there ten days before? A. I said that side. Q. You went up the north side instead of the south side? A. Yes, sir. Q. This dark, stormy night, with no lights, you started up a street where you knew there was a dangerous spot a week or ten days before? A. Yes, sir. Q. Why did you do that? A. I was under the impression the commissioners had done their duty and had filled that hole up."

It was suggested, rather than argued, that he should have taken a lantern, as the street lights were out, so he could see whether the way was safe, but the evidence shows that Queen street, with one exception, was the most frequented street in the town, and it could hardly be contended that it could be held as a matter of law to have been contributory negligence not to have taken a lantern at half-past seven o'clock in the evening to go over those two squares and part of another to the post office of a town of the size of Chestertown. The case of *Commissioners of Allegany County* v. *Broadwaters,* 69 Md. 533, would seem to be a sufficient answer to that contention. On pages 535 and 536 it is said: "The second prayer of the defendants was also properly refused. It announces, as a legal principle controlling the case, that the plaintiff could not recover in the action if, knowing the condition of the road, he failed to carry a light. It has been decided in a number of cases that neither the failure to carry a light on a dark night by one acquainted with the road, nor a knowledge of its defective condition is conclusive evidence of contributory negligence."

Nor could it be said that because there was another route he should have taken that and, not having done so, can not recover. In *Calvert County* v. *Gibson,* 36 Md. 229, the defendant asked the Court to instruct the jury that if they found 'that the alleged bad road, on which the plaintiff's wagon was broken, could have been avoided by using another road leading to said wharf, which was in good condition and but a short distance further, and had been used by the

public for upwards of twenty years, then the plaintiff did not use due care and diligence and is not entitled to recover." The Court first said that the prayer was defective in not submitting to the jury to find knowledge on the part of the plaintiff that the one road was dangerous and the other safe, but added: "Apart from this the prayer is radically wrong. It is no excuse for the defendants, if damage was sustained in the manner set out in the prayer of the plaintiff, to say that another road could have been traveled without accident." In *Charles County* v. *Mandanyohl,* 93 Md. 150, the Court said: "The road upon which the plaintiff was traveling was not impassable and not in such condition that accident must necessarily result from an attempt to use it. The plaintiff had a right to use it and was justified in so doing. All that the law exacted of him was that he should use it with due care; and if the jury found that he was so using it, and that he did not by his own negligence directly contribute to the happening of the accident that produced his injury while so using it, then in the language of this Court in the case of *County Commissioners of Calvert County* v. *Gibson,* 36 Md. 229, 'it is no excuse for the defendants * * * to say that another road could have been traveled without accidents.'"

As to the knowledge of the plaintiff of the defect in the highway, the case of *County Commissioners of Prince George's County* v. *Burgess,* 61 Md. 29, is applicable. It was there sought to shift the burden as to contributory negligence on the plaintiff because he had knowledge of a defect in the bridge. The Court declined to adopt the defendant's contention, and, after referring to a number of cases, said: "The extent to which the road or bridge is out of repair is always a material question, and upon that depends the effect of a plaintiff's knowledge upon his right to recover. If the defect was so extensive as to make any attempt to cross reckless, and the plaintiff so knew, and still endeavored to cross, we have said already that in such state of proof the case should be withdrawn from the jury; but ordinarily it would be a question for the jury under instructions respecting their

duty if they found a particular state of facts. In this case the knowledge of the plaintiff was some evidence of negligence proper to go to the jury, to be considered by them in conjunction with the condition of the bridge of which he had knowledge, and to be found a bar only in case they found the bridge from the proof to be wholly unfit for use, and that he knew its true condition. His knowledge was not necessarily conclusive against his right to recover unless the defect was such that no reasonably prudent man would have ventured an attempt to cross."

The question is not whether the Court, if it was sitting as a jury, would find the plaintiff guilty of contributory negligence, but whether it can properly say that the evidence so conclusively shows such negligence that under the law he was not entitled to recover. It is not always easy to draw the line between such cases, but we are of the opinion that this case as presented by the Record should have been submitted to the jury, and hence the Court erred in granting the defendant's prayer. In addition to the authorities we have cited, the testimony of the plaintiff quoted above as to why he adopted the route he did was for the consideration of the jury. Such a defect in a sidewalk on a street used as this is might reasonably be presumed to be repaired in a week or ten days, for even if the brick could not be relaid, on account of the weather, a few cinders could be used, as was done after the accident.

Of course, when the Court granted the prayer of the defendant, it followed that those of the plaintiff would be rejected. As the case will be remanded for a new trial, it is proper to briefly refer to them. His first and second prayers were defective in not submitting to the jury the question of notice, actual or constructive, to the defendant. *Keen* v. *Havre de Grace, supra; Baltimore City* v. *Walker,* 98 Md. 637 (which distinguishes that case from *Keen's case*) ; *Annapolis* v. *Stallings,* 125 Md. 343, and *Commissioners of Delmar* v. *Ven-*

*ables,* 125 Md. 471, are amongst the many in this State on the subject.

In view of our conclusion as to the defendant's prayer, we see no objection to the theory of the third prayer of the plaintiff, although the form of it might be changed to prevent misleading the jury. It is not necessary for the defendant to offer evidence of contributory negligence, for if the plaintiff's evidence discloses it the defendant can rely on it before the jury, and, of course, can do so in order to take the case from the jury when the evidence justifies that action. The plaintiff's fourth prayer is practically the same as the one approved in *Annapolis* v. *Stallings, supra,* and would doubtless have been granted if the case had been submitted to the jury. It follows from what we have said that the judgment must be reversed.

> *Judgment reversed and new trial awarded, the*
> *appellee to pay the costs.*