## PIERCE *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 277, September Term, 1958.]

*Decided June 10, 1959.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*Henry J. Frankel,* for appellant.

*Jerome A. Dashner, Assistant City Solicitor,* with whom were *Hugo A. Ricciuti, City Solicitor,* and *F. Clifford Hane, Deputy City Solicitor,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

Charles Pierce, the tort plaintiff, aggrieved when the trial court took from him the potential fruits of the jury's verdict against the Mayor and City Council of Baltimore, by granting a judgment notwithstanding the verdict on the ground of contributory negligence, appeals to us to reinstate the verdict.

One night near the end of October, 1957, on the way to cut the grass at the home of his shop foreman (he said it was desirable to cut grass at night because "it is nice and tender then"), Pierce alighted from a bus at a duly designated stop at the northeast corner of Thirty-second Street and Harford Road. There is no sidewalk at that point on the east side of Harford Road, and Pierce, not wanting to walk in the bed of the heavily traveled thoroughfare, walked towards his destination along an unpaved strip of ground that parallels Harford Road from the bus stop to Erdman Avenue. In the course of the trip, he caught his left foot under a metal plate covering a drain and fell. He said there was no light at the place where he fell; that he walked on the dirt strip because, at that point, one had to; and that although he had walked in that area once or twice before over a period of months, he had never noticed the drain or the plate. He testified also that almost everyone who gets off the bus where he did walks where he walked in order to get to another bus stop.

His description of the accident was that a square, solid, black steel plate was over the hole formed by the concrete sides that surrounded the drain; that the drain was close to a tree and behind it from the angle at which he approached the tree; and that as he passed to the right of the tree, the steel plate, which was raised seven or eight inches above the concrete walls of the drain, caught his foot. His exact words were: "When I picked up my foot to take a step in walking it caught me in

here and over the top of it. If it had been dead behind the tree I would never have walked into it, but it was hanging out."

A police officer, who was summoned immediately after the accident, testified that the plate was of black metal about two and a half feet square and about a quarter of an inch thick, and that it protruded above the drain "at least two or three inches." He said the nearest light was across Harford Road, on the west side.

One photograph in the record shows grass growing from the curb some three or four feet to the east for a number of feet south of the tree spoken of, but that beyond the grass to the east and to the north of the tree there is bare dirt on which are a number of small scattered stones. Another photograph shows that the concrete sides, particularly on the south side of the drain, had worn away or disintegrated, and that there are several upright pipes or stakes within and protruding above the concrete sides surrounding the drain. From the latter photograph it appears that it would have been impossible for the plate to have been flush with the top of the south concrete side and that the protrusion of the plate above it, testified to by both the plaintiff and the police officer, was brought about by these stakes or pipes.

It was stipulated that the bus stop at which Pierce alighted had been designated as such by the Transit Company with approval of the City; that there are no sidewalks on the east side of Harford Road between the intersections of Thirty-second Street and Erdman Avenue; that the land on which Pierce was walking lies between the park property and that part of Harford Road presently used by vehicular traffic; that the land formerly was used by the Transit Company as a right-of-way; that in May, 1957, the company abandoned the right-of-way and it was accepted at that time by the Mayor and City Council for whom it was inspected by an inspector of the Bureau of Highways; and that "the steel plate described in the declaration and testimony had been emplaced or installed by the Baltimore Transit Company."

The lower court decided the case on contributory negligence, but the question of primary negligence also calls for decision

and was argued in this Court by both sides. We think that the final decision was for the jury, both as to primary and contributory negligence.

It is generally held, and this Court has agreed, that a municipality has a duty to maintain streets, sidewalks, and footways, and the areas contiguous to them, in a reasonably safe condition. *Baltimore v. Eagers,* 167 Md. 128, 136 ("The duty to keep the streets and footways of the municipality in a safe condition for public travel, and to prevent and remove a nuisance affecting the use and safety of these public ways, extends to the land immediately contiguous to these public ways."); *Centreville v. Queen Anne's County,* 199 Md. 652, 656; *Haley v. Baltimore,* 211 Md. 269; *Birckhead v. Baltimore,* 174 Md. 32; *Hagerstown v. Hertzler,* 167 Md. 518, 520-521. In the *Hertzler* case, the area involved was a grass strip between the curb and the sidewalk in which there was a tree supported by a guy wire over which the appellee fell. In permitting recovery against the municipality, this Court said: "The strips are parts of the highway, although the rights and duties with respect to them are not the same as those with respect to the paved ways, laid out for traveling. Foot passengers are not excluded from them, unless, indeed, by some effectual withdrawal of the strips from use, either by fences or notices. When the strips are left open to them, the pedestrians are, as stated, bound to protect themselves against any of the regular uses and obstructions, and comparative roughness of the ground; protection may be required of the municipality only beyond that point. It is obliged to exercise care for the safety of the pedestrians against dangers, not from the customary, permissible uses or conditions, but dangers of a kind that would not be expected by foot passengers, dangers in the nature of traps. If the municipality should know of such dangers, or in the exercise of due care ought to know of them, it would be answerable to foot passengers who, though exercising due care on their own part, do not perceive the dangers. So it has been held that the municipality must exercise care to protect against injury from unexpected obstructions, such as pipes or piles of stone on the ground, holes, and wires fencing off seeded portions."

Although there is contrariety in the decisions, sometimes be-

cause of the facts involved and sometimes because of a local doctrine or emphasis, the courts generally agree with the rule of the *Hertzler* case and its qualification that if the defect is slight or trivial, there is no right of recovery against the municipality. Compare *Leonard v. Lee,* 191 Md. 426, with *County Commissioners v. Collins,* 158 Md. 335. If, however, the obstruction or defect is not to be expected and is substantial, and the municipality has actual or constructive notice of it, generally recovery is allowed, even though the area involved is one not actually or formally dedicated to pedestrian use.[1]

As we read the record, the jury properly could have concluded that the City had violated a duty owed Pierce to have anticipated that pedestrians would not walk in the street with their backs to traffic, but rather accept the invitation offered by the circumstances and environment to walk on the strip on which Pierce walked, and that one so walking might injure himself on the drain or the plate. There was testimony that permitted the inference that the City had actual or constructive notice of the defective conditions that caused the injury. It is apparent from the photographs in the record that the condition which caused the metal plate to tilt above the concrete sides of the drain was of long standing and must have existed when the City inspected the property some five months before the accident or have come into being shortly thereafter. The jury could have inferred from the testimony and the photographs that Pierce was walking along the grass plot near the curb in a line with the tree until he got to a point so close to the tree that he must have diverged to the right, and that when he did so he caught his foot under the black metal plate that was

1. 19 McQuillin, *Municipal Corporations* (3rd Ed.), Secs. 54.35, 54.38, 54.80; Annot. 19 A.L.R. 2d 1053; cases favoring the plaintiff in which the rules approved in the *Hertzler* case have been followed include: *Oklahoma City v. Marshall* (Okla.), 169 P. 2d 1020; *James v. City of Portage* (Wis.), 5 N. W. 31; *Hillyer v. Borough of Winsted* (Conn.), 59 A. 40; *Graham v. City of Albert Lea* (Minn.), 50 N. W. 1108; *Rea v. City of Sioux City* (Iowa), 103 N. W. 949; *Edgeworth v. City of Pelly* (Tex. Ct. Civ. App.), 173 S. W. 2d 254; *Burgess v. Kansas City* (Mo.), 242 S. W. 2d 591; *Floyd v. Town of Lake City* (S. C.), 99 S. E. 2d 181, 185; *Crosby v. City of Chester* (S. C.), 14 S. E. 2d 552; *Butler v. City of McMinnville* (Ore.), 268 P. 760, 762.

protruding above the drain in a position well-calculated to catch an unwary traveler. Although the amount of care required of the City was not as great in the area involved as it would have been as to a paved sidewalk or a street, nevertheless, the defective condition of the drain was more than slight or trivial and, indeed, almost amounted to a trap. This, the cases relied on say, was enough to make the municipality liable. Their holdings are well summed up in the annotation referred to above at page 1065 of 19 A.L.R. 2d: "Water meters and the boxes in which they are contained are, as matter of common knowledge, often placed by a municipality in the parking or strip between the sidewalk and the street curbing. While there seems to be some difference of opinion as to the degree of care owed by the municipality, it would seem to be a general rule that due care must be exercised to keep such parkings reasonably safe for persons having occasion to walk upon them. This has been taken to mean that water meters should neither be constructed nor maintained in a negligent manner so as to endanger a pedestrian walking across the parking, either because of the defective condition of the meter, its cover, lid, or cap, causing it to be unable to support the weight of a person stepping on it or because of its protrusion or submergence in the ground."

Our conclusion on the question of contributory negligence is, as has been indicated, that on the record we cannot find that the conduct of Pierce was so prominent and decisive as to leave no opportunity for a difference of opinion in the minds of reasonably prudent men that his negligence proximately contributed to the cause of the accident. In reaching this conclusion, we have considered that the jury could have found and weighed the following facts: there was no sidewalk at the point of the accident; it would be manifestly dangerous to walk in the bed of the street in the path of vehicular traffic; reasonably prudent individuals would decide that it was safer to walk in the area involved than in the street; the normal and to be expected course would be for pedestrians to walk on the grass near the curb until the presence of the tree required them to veer to the right or left; the area was dark at the time of the accident; Pierce, although he had once or twice walked

over the strip involved, had not recalled the drain or the plate; the cause of the accident was the fact that the plate was raised to a considerable extent above the sidewalls of the drain; and the plate was black and difficult to see at night. We think that these fairly permissible findings throw the case to the side of the line that does not constitute contributory negligence as a matter of law. *Baltimore v. Grossfeld,* 173 Md. 197; *Hagerstown v. Hertzler, supra; Vannort v. Chestertown,* 132 Md. 685, 690; *County Commissioners v. Collins, supra; Baltimore v. Poe,* 161 Md. 334, 337-339; *Roth v. Highways Commission,* 115 Md. 469, 477; *Commissioners of Delmar v. Venables,* 125 Md. 471; *County Commissioners v. Burgess,* 61 Md. 29; McQuillin, work and volume previously cited, Sec. 54.127; and 19 A.L.R. 2d 1080, *et seq.*

The judgment below is reversed, the verdict of the jury is reinstated, and judgment is entered for the appellant.

> *Judgment reversed, with costs, and judgment for $2,500.00 entered for the appellant as of January 26, 1959.*

PRESCOTT, J., dissents.