## TYLER *v.* MARTIN'S DAIRY, INC.

[No. 105, September Term, 1961.]

*Decided December 7, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and SYBERT, JJ.

*I. William Stempil,* with whom was *Murray H. Fout* on the brief, for the appellant.

*John M. McInerney,* with whom were *McInerney & Latham* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The trial court directed a verdict for the defendant, Martin's Dairy, Incorporated, in a suit by a patron, Mrs. Tyler, who had fallen over a curb marking the limit of the parking lot adjacent to the retail store of the dairy, and Mrs. Tyler has appealed from the judgment for the defendant for costs.

The dairy business was conducted in a one-story brick building around which ran a porch. Shrubs were planted along the outside of the porch, and between the shrubs and the parking lot ran a walkway or pavement. A curb several inches high ran along the walkway, dividing it from the parking area. About nine o'clock in the evening in October, Mrs. Tyler's son and daughter-in-law drove her to the dairy, where she had not been before. Ordinarily there were flood lights which illuminated the parking area, but on this night the place was in the process of closing and all but one of the outside lights were off. There were patrons in the building and light shone through the windows. The son parked the car with the front almost at the curb, a few feet to the left of an opening in the curb through which ran a path or walk to the front porch, from which one entered the dairy. The son got out the driver's side, stepped over the curb and went on towards the entrance door. (He did not see the fall.) The daughter-in-law got out the other side of the car, walked a few feet straight away from the side of the car, then turned to her left onto the path that led through the opening in the curb and continued beyond the line of the curb a foot or so towards the front porch, where she paused.

Mrs. Tyler followed her daughter-in-law part way, then

went back to the car to make sure the doors were locked. She turned away from the rear door of the right side of the car and, in the words of the daughter-in-law, "rather than come the way she had the first time with me before she started back to lock the door Mom came diagonally across the hedge there and that is when she fell." Mrs. Tyler, explaining her contention that she tripped over the curb, said that the second time she walked diagonally from the car towards her waiting daughter-in-law "and the glare from the inside of the building on my glasses and not being familiar with the place, I struck this object and fell." Again she said: "I could see the great glare of light coming from the inside of the building and I could see the shrubbery and that is all I could see." (On cross-examination she said: "I was blinded to the extent I couldn't see.") Then, she "walked diagonally from the car towards her—my daughter-in-law stood about right here * * * instead of walking around this way to go in I walked diagonally right across this way." She did not see the curbing—she did not look down.

The son testified there was enough light so that he did not feel it necessary to leave the car lights on and that you could see the curbing "if you knew it was there." He would not say it was so dark you could not see the curb. The daughter-in-law said that she could see the curbing.

The trial court held that there was no evidence of primary negligence—that, as this Court said was true as to the magazine rack over which the patron fell in *Evans v. Hot Shoppes, Inc.*, 223 Md. 235, 239, the dairy met its obligation to Mrs. Tyler as a business invitee, to use "ordinary care and caution * * * to see that that portion of its premises used by its patrons was in such condition as not to imperil her, so long as she, herself, exercised ordinary care." He found that the curb involved no unreasonable risk to patrons, and that the dairy had no reason to believe a patron would not see the curb and recognize the danger of falling over it.

There is much force in the analogy drawn by the trial court but if we assume for the purpose of decision, without deciding, that the dairy was negligent in failing to keep the flood lights on while there was a likelihood that patrons would be

walking about the exterior of the store, the result is not changed, because we think Mrs. Tyler was contributorily negligent as a matter of law—that reasonable minds could not differ as to her imprudence.

She was in an unfamiliar place. She had been shown a safe way to walk to the entrance to the dairy to which she wanted to go. Instead of following this route, she chose to walk a different way, either blinded by a glare of light from inside the building, according to her version, or in such darkness that she could have seen the curbing only with difficulty, if the version of the son and daughter-in-law is correct. She did not look aside and wait until she could recover from the glare and she never looked down to ascertain if there were obstructions in her path. To walk blindly or unlooking in a strange environment, when there is no need to do so, is to be negligent as a matter of law. *Hyde v. Blumenthal*, 136 Md. 445; *Nocar v. Greenberg*, 210 Md. 506, 516; *Sutton v. Mayor & C. C. of Baltimore*, 214 Md. 581; *cf. Pierce v. Mayor & C. C. of Baltimore*, 220 Md. 286. And see also 1 *Shearman and Redfield on Negligence* (Rev. ed.), Sec. 131; Annotation, "Entering Dark Place on Unfamiliar Premises as Contributory Negligence," 163 A. L. R. 587, 590.

*Judgment affirmed, with costs.*