## BENNETT et al. *v.* DISTRICT HEIGHTS APARTMENTS, INC.

[No. 114, September Term, 1968.]

656

Decided March 12, 1969.

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN, SINGLEY and SMITH, JJ.

*Ferdinand J. Mack,* with whom were *Shadoan & Mack* on the brief, for appellants.

*Marvin B. Miller,* with whom were *Couch, Blackwell & Miller* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Appellant (Bennett) was a tenant of District Heights Apartments, Inc., the appellee, at the time of this unfortunate occurrence in 1966. He appeals from entry of a judgment *n.o.v.* We shall affirm the action of the trial court.

Bennett's apartment was on the third floor of a three-building complex. His apartment building was in the center of the three buildings. In the basement directly underneath the Bennett apartment was a boiler room in which was housed a furnace used to heat all three buildings.

On occasions prior to this incident the fire department had ordered the building occupied by Bennett evacuated because of

smoke and oil fumes from this furnace. Approximately one month prior to this incident the furnace oil accumulated in the boiler room to a depth of several inches and poured over the threshold from the boiler room into the stairway leading up to the ground level. On that occasion the fire marshal ordered the landlord's employees to remove the oil from the areaway and stairs leading to the ground level and to place sawdust over the area where the oil had spilled. A dispute exists as to whether this was done and whether the condition continued unabated until after this incident.

On the evening of April 25, 1966, tenants in the apartment house smelled smoke and oil fumes. A friend of Mr. and Mrs. Bennett on another floor of the same building telephoned the maintenance man for the apartment building to report the condition. She waited a period of time and then went to the Bennett apartment. Mrs. Bennett telephoned the maintenance man and then called back a second time a half an hour or forty-five minutes later. It is claimed that these calls were unheeded. The reason for believing that there was no response is that a procedure was claimed to exist by which the maintenance man would knock on the door of the complaining apartment to advise that the boiler had been fixed and no such knock was given.

Bennett took a shower. The water was cold, which meant to him the boiler was not functioning. The record is not completely clear, but the inference might be drawn that he took this shower after the oil fumes were smelled. After waiting approximately one hour from the time of his wife's first call with no knock on the door indicating a response from the maintenance man, Bennett decided to investigate "to see if the condition of the oil or the boiler would warrant getting the people out of the building or to notify the Fire Department".

To reach the boiler room Bennett was obliged to go out of the front of the building, and then around an adjoining building. The only entrance to the boiler room was a stairway in the rear of the center apartment house leading from ground level down to a small areaway outside the boiler room door. It was approximately 10:00 P.M. when he went to investigate. It was a dark night. He had no flashlight and did not attempt to borrow one. There was no outside light in the rear of the apart-

ment house and no illumination except such illumination as might come from lights in some of the apartments. There was no light over the stairway. When Bennett approached the stairway he could see "a couple steps down". He could see the doorway at the bottom of the steps but could not see steps below the second step. He admitted on cross-examination in response to a hypothetical .question that had steps been removed below the top two steps he would not have been able to see this.

Bennett slipped on oil and leaves on "about the second, third or fourth step from the bottom". He sustained painful injuries which produced this litigation.

A jury in the Circuit Court for Prince George's County returned a verdict in favor of Mr. Bennett in the amount of $9000.00 and in favor of Mr. and Mrs. Bennett for loss of consortium in the amount of $1000.00.

Judge Ralph W. Powers granted defendant's motion for judgment *n.o.v.* stating:

> "Except for the added feature here in this case of a claim on the part of the plaintiff that he had business going there and therefore, the landlord had a duty to him under those circumstances, except for that the case would be extremely simple, we wouldn't be here because there would have been a directed verdict at the conclusion of the case. I feel that in the absence of any law that can be pointed out that clearly covers this situation I must follow the established law as I believe it to be, and that is that since this particular part of the premises was not open to the tenants that the landlord did not have a duty to maintain this and, therefore, there was no breach of duty; and, secondly, even if he did have, the circumstances under which the plaintiff went down there, where he did not exercise any caution in proceeding down dark, unlighted steps, were such that he would be guilty of contributory negligence as a matter of law."

In the view we take of this case we are not obliged to determine whether Bennett was a licensee or invitee nor are we obliged to determine the duty of care owed the tenant by the

landlord, since we are of the opinion that Bennett was guilty of contributory negligence as a matter of law.

In *Miller v. Mullenix*, 227 Md. 229, 176 A. 2d 203 (1961), Judge Sybert said for this Court:

> "The familiar rule to be applied in determining whether the facts justify a holding that the plaintiff was guilty of contributory negligence as a matter of law is that the act so relied on must be distinct, prominent and decisive, and one about which reasonable minds would not differ in declaring it to be negligence." *Id.* at 232.

In 1 *Shearman and Redfield, Negligence,* § 121 (revised ed. 1941), the general rule applicable is stated as follows:

> "A person who comes into an unfamiliar situation, where a condition of darkness renders the use of his eyesight ineffective to define his surroundings, is not justified, in the absence of any special stress of circumstances, in proceeding further, without first finding out where he is going and what may be the obstructions to his safe progress. Violation of that rule is contributory negligence as matter of law.
>
> * * *
>
> "Under some circumstances, however, there may be a question for the jury rather than contributory negligence as matter of law. This situation exists when the facts permit a finding that the injured party's conduct had its basis in a reasonable expectation."

Bennett contends he was not guilty of contributory negligence as a matter of law. He relies on *Tie Bar, Inc. v. Shartzer,* 249 Md. 711, 241 A. 2d 582 (1968). That case is distinguishable. In it a painter fell down a basement stairway in the process of turning on lights. He had never been to the shop before and was not familiar with the premises. However, he was following instructions given him by the manager of the store. As more than one inference could be drawn from the facts as to the care or lack of care of the plaintiff, it was held that the issue was

properly submitted to the jury. The case is illustrative of the last above quoted paragraph from *Shearman*.

Our predecessors in *Alleghany Co. v. Broadwaters,* 69 Md. 533, 16 A. 223 (1888), and *Vannort v. Commrs. of Chestertown,* 132 Md. 685, 689, 104 A. 113 (1918), held that neither the failure to carry a light on a dark night *by one acquainted with a public road,* nor a knowledge of its defective condition is conclusive evidence of contributory negligence. In this case we do not have a situation where an individual had passed and re-passed over a given area as had Messrs. Broadwaters and Vannort in a day when the lights spoken of were lanterns. *Cf. Crider v. Duvall,* 228 Md. 513, 180 A. 2d 693 (1962), in which in an age when light was more readily available this Court held a man guilty of contributory negligence as a matter of law, notwithstanding his familiarity with the area. The two earlier cases involved public highways. In *Crider* there was involved a stairway on the premises of Crider's employer which Crider traversed at least once a day for a number of days. With a door closed there was no light to illuminate the stairway. This Court said:

> "All he needed to do to be safe was to reopen the door, leave it open (which, as he concedes, would have afforded ample light) and go down the steps. Instead, he chose to step out and grope in utter darkness when there was no need to do so. This, we hold, was contributory negligence as a matter of law." (citing authorities) *Id.* at 514-15.

In *Hyde v. Blumenthal,* 136 Md. 445, 110 A. 862 (1920), this Court held a workman guilty of contributory negligence as a matter of law. He visited defendant's building to repair an electric appliance. He had never been there before. He left by a dark hallway leading to the rear door. When he returned the following day he entered by this rear door. Judge Adkins there said for the Court:

> "The appearance of the unlighted hall, so dark that he could not find the entrance to the pantry through which he had passed the day before in leaving the building — so dark, indeed, that he was not sure he

could see his hand in front of his face—was sufficient warning of danger to have turned back a prudent man. Under such conditions he advanced at his own risk and must be held to have been responsible for the accident which befell him." (citing authorities) *Id.* at 450-51.

*Tyler v. Martin's Dairy, Inc.,* 227 Md. 189, 175 A. 2d 587 (1961) is in point. In that case Judge (now Chief Judge) Hammond said for this Court:

> "She was in an unfamiliar place. She had been shown a safe way to walk to the entrance to the dairy to which she wanted to go. Instead of following this route, she chose to walk a different way, either blinded by a glare of light from inside the building, according to her version, or in such darkness that she could have seen the curbing only with difficulty, if the version of the son and daughter-in-law is correct. She did not look aside and wait until she could recover from the glare and she never looked down to ascertain if there were obstructions in her path. *To walk blindly or unlooking in a strange environment, where there is no need to do so, is to be negligent as a matter of law. Hyde v. Blumenthal,* 136 Md. 445; *Nocar v. Greenberg,* 210 Md. 506, 516; *Sutton v. Mayor & C.C. of Baltimore,* 214 Md. 581; *cf. Pierce v. Mayor & C.C. of Baltimore,* 220 Md. 286. And see also 1 *Shearman and Redfield on Negligence* (Rev. ed.), Sec. 131; Annotation, 'Entering Dark Place on Unfamiliar Premises as Contributory Negligence,' 163 A. L. R. 587, 590." *Id.* at 192. (emphasis added)

In this case there were no instructions to Bennett by anyone familiar with the premises. Bennett was not misled by any act of the defendant with reference to darkness. He was faced with no sudden emergency, as indicated by the fact that an hour elapsed after smoke and oil fumes were detected before investigation was made, during which time he may have taken a shower. The fire company was not called until after his in-

vestigation. No further inquiry was made of the maintenance man before he made the investigation. Bennett was unfamiliar with the area, yet in this day of light and modern conveniences he made no attempt to obtain light, although by his own statement if a portion of the steps had been removed he would have been unable to see this. Reasonable minds would not differ that it was contributory negligence as a matter of law to walk blindly into this strange environment when not necessary.

*Judgment affirmed; appellants to pay the costs.*