MERSHON *v.* GINO'S, INC.

[No. 359, September Term, 1970.]

*Decided April 6, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Melvin J. Sykes,* with whom was *David Kimmelman* on the brief, for appellant.

*James D. Peacock,* with whom were *Francis J. Gorman* and *Semmes, Bowen & Semmes* on the brief, for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

The appellant (Mrs. Mershon), a postal clerk, not quite 60, lives alone in Dundalk, Baltimore County. Shortly before 5:00 p.m. on 23 April 1968 she paid her first visit to the Gino's Drive-In on Pulaski Highway. Sunset that

day was at 6:51 p.m. She parked her car in the fourth space from the entrance; at the time the interjacent spaces were occupied by other vehicles. She went in, bought some hamburgers and french fried potatoes. Carrying the bag of food and her purse she came out through the same door. The other vehicles had gone so she could have walked directly to her car but just as she set out to do so she fell and ruptured her spleen. Her suit against Gino's came on for trial in the Superior Court of Baltimore City on 4 May 1970 before Harris, J., and a jury. A few months later Judge Harris granted Gino's motion for a judgment n.o.v. thereby setting at naught the $13,-500 majority (7 to 5) verdict in favor of Mrs. Mershon. He concluded that the evidence was insufficient to support a finding of primary negligence and that she was guilty of contributory negligence as a matter of law. Since we agree that he was right in respect of the latter it will not be necessary for us to consider whether the evidence could support a finding of primary negligence. We have been mindful, of course, of the familiar rule that the evidence and all logical and reasonable inferences deducible therefrom must be considered in a light most favorable to Mrs. Mershon. *Greenway v. Craft*, 258 Md. 1 (1970).

Gino's is a glass-walled building surrounded by parking spaces set off one from the other by yellow lines painted on the black asphaltic paving. A sidewalk encircles the building. Concrete "bumpers," also painted yellow, placed about four or five feet from and parallel with the sidewalk, kept vehicles from encroaching upon it. Along one side of the building the bumpers are square in section; along the side which is our present concern they were nearly triangular; we say "were" because there is evidence they were removed after Mrs. Mershon fell.

Larry Sigmon (except for a physician and Mrs. Mershon the only witness to testify) was 13 years old when he saw Mrs. Mershon fall. He said he had been shining shoes in the area for about two or three months; it was

his custom to be there between 3:00 p.m. and "5:00 and 6:00" p.m. He saw her fall "over the bumper stop by the door." He had seen "nine or ten * * * people fall over the same bumper stop * * * [but] they got right up and left." Asked if there was "anyone on the pavement or around her * * * [or] between her and the curb * * * [or] between her and the bumper" he said, "No." "Was there anyone milling around on the pavement there?" he was asked, to which he replied, "Not on the side that she fell on."

We think Judge Harris accurately summarized Mrs. Mershon's testimony. What follows is an excerpt from his opinion:

"On direct testimony, Mrs. Mershon testified that, when she entered Gino's, she 'went around the front of the spaces to the door' of the store; that she 'noticed a series of yellow lines' on the parking lot, indicating the parking spaces; that, as she was leaving the door to Gino's, she was carrying her purchase of 'a couple hamburgers and French fries' and her pocketbook; that, as she 'was walking out there were people coming in * * * I was coming out the door and stepped off the curb and fell.' In answer to a question as to what caused her to fall, she testified as follows:

'This obstruction in the walk-way there. It was a raised triangular shape, but it was long. It was an obstacle—buffer, I don't know what they call them.'

"She further testified on direct examination, in answer to a question as to when she first observed the obstacle that she fell upon: 'after I looked to see what I fell over was the first time I noticed there was anything sticking up.' She further testified that the buffer was yellow in color.

"On cross-examination, Mrs. Mershon testi-

fied that, at the time of her accident, she 'wouldn't say it was sufficiently dark that I wouldn't be able to see, but it was getting dark * * * I saw the yellow lines * * * yes, I would say they were yellow'; and that both the car bumpers and the parking lines were the same color, yellow. She further testified that if she 'had seen anything besides the line, I certainly wouldn't have deliberately tripped * * * I usually look where I walk.' In answer to a question as to whether she was 'looking down at where' she was walking at the time of the accident, Mrs. Mershon answered:

'Well, I looked down as much as anybody looks down when they walk. You don't look down every minute, but you do look down. You also avoid things that are coming at you or towards you.'

"She further testified that she was not 'distracted at the time of this accident'; and in answer to a question as to whether she saw the car bumper as she came into the store, she stated: 'I didn't notice it, no.' In answer to a question as to why she did not leave Gino's store and take the same route that she had taken when she entered the premises, she answered:

'Well, when I left, evidently there was no car parked there and I just made a short-cut there. The obstruction was right at the walk when I stepped off the walk.'

"She further testified that she did not see the car bumpers when she entered Gino's that day; that she 'did not see it until I fell over it and noticed it.' In answer to a question as to whether there was anyone in front of her, between her and the bumper over which she fell, the plaintiff answered:

'No, I wouldn't say there was anyone in

front of me between me and the bumper, but there were people coming in towards the door on the sidewalk before I stepped off.'

"Then follows this testimony by Mrs. Mershon on cross-examination which is particularly significant:

'Q. There was nothing obstructing your vision down and to the front of you? A. Well, once I stepped off the curb it is just, I would say, about a foot between the sidewalk and the bumper so there wasn't room for anyone to be standing there.

'Q. So there was nothing obstructing your vision there, was there? A. Not of the actual bumper, if that is what you mean.' "

Judge Harris considered the factual situation in *Tyler v. Martin's Dairy, Inc.*, 227 Md. 189 (1961), to be closer to the case at bar than any other Maryland case and he thought it ought to be controlling. Mrs. Mershon, on the other hand, insists there are facts in the instant case which distinguish it from *Tyler* and that there is enough substance in the distinction to attenuate the impact of *Tyler*. There Mrs. Tyler tripped over a curb on the outside of the dairy's retail store. It was about 9:00 p.m. and all but one of the outside lights had been turned off as the store was about to close. Judge Hammond (now Chief Judge) said for the Court:

"She [Mrs. Tyler] was in an unfamiliar place. She had been shown a safe way to walk to the entrance to the dairy to which she wanted to go. Instead of following this route, she chose to walk a different way, either blinded by a glare of light from inside the building, according to her version, or in such darkness that she could have seen the curbing only with difficulty, if the version of the son and daughter-in-law is correct. She did not look aside and wait until she

could recover from the glare and she never looked down to ascertain if there were obstructions in her path. To walk blindly or unlooking in a strange environment, when there is no need to do so, is to be negligent as a matter of law." *Id.* at 192.

Mrs. Mershon points out that whereas Mrs. Tyler's injury occurred at night, either in darkness or in the glare of a blinding light, she (Mrs. Mershon) "was proceeding in a place of apparent safety and was *deceived* by a negligently created condition of the premises." (Emphasis added.) Had she in fact been deceived the distinction might have some validity but even if we assume that it results in the demotion of *Tyler* to something less than controlling we think *Tyler* is nonetheless highly persuasive. Equally persuasive is the language of Chief Judge Prescott who spoke for the majority in *Southern Md. Elec. Coop., Inc. v. Blanchard,* 239 Md. 481 (1965). Since Judge Singley has included Judge Prescott's comment in the Court's opinion in *Hynes v. Hutzler Brothers Co.,* 261 Md. 345 (1971), we shall not repeat it here. In *Hynes* the appellant, an elderly woman, fell and injured herself in the shoe department, claiming an employee had bumped into her. Judge Singley said, for the Court:

> "As we see the case, Mrs. Hynes' failure to observe the man with whom she collided permits of but one interpretation. It was the distinct, prominent and decisive act in regard to which there is no room for ordinary and reasonable minds to differ. It was the cause of her injury and amounted to contributory negligence as a matter of law, *Boyd v. Simpler,* 222 Md. 126, 131, 158 A. 2d 666 (1960)."
>
> \* \* \*
>
> "If Mrs. Hynes had looked, she would have seen Jones and could have avoided the accident." *Id.* at 350.

In support of the notion that she was "deceived" Mrs. Mershon leans heavily on *Nary v. Parking Authority of the Town of Dover,* 58 N.J.Super. 222, 156 A. 2d 42 (1959), where the plaintiff fell over a timber bumper block in the late afternoon. We see in that case, however, a distinguishing feature which we think is significant. "* * * [T]he bumper blocks were freshly painted the same color as the white lines of the parking lot, and *were located on top of a white line* that had previously been observed by the plaintiff; * * * there were *no openings or walkways through the bumper."* 156 A. 2d at 45. (Emphasis added.) Here, as Judge Harris observed, the bumper "was painted a different color from the asphalt surface of the ground"; it had not been placed on top of a painted line and there were openings or walkways between the bumpers. The photographs in evidence make it quite clear that each of the five bumpers was about six feet long; that the spaces or walkways between them were from 12 to 18 inches in length; that the spaces had not been painted; that the bumpers did not delineate a parking space or a walkway; that their only apparent purpose was to keep vehicles from encroaching upon the sidewalk. It is also clear from the photographs that when Mrs. Mershon fell she could not have been more than a few feet from the walkway between bumper #1 and bumper #2 nor more than three or four feet from the other end of bumper #1. Mrs. Mershon is obviously a woman of at least ordinary intelligence and there is nothing to show that her sight was impaired. The bumpers were unmistakably three-dimensional; they were laid in a line about midway between the sidewalk and the nearest parking space; there was nothing on either side of them but the black pavement. Had she looked she must have seen them and had she looked she would have seen also an unobstructed path on either side of bumper #1. For a discussion of the "blending effect" of certain materials *see Lloyd v. Bowles,* 260 Md. 568 (1971).

There is to be sure an abundance of bumper cases. Both parties have cited a number of them. However, none of

the cases cited, nor any that we have been able to find, have in combination all of the factors present here. And of the cases submitted to a jury we have found none which did not present at least one of the following situations: bad lighting, bumpers the same color as the paving, bumpers placed directly on a flat line of the same color, or a defect in the bumper. *See, e.g., Aaron v. Logro Corp.,* 226 So. 2d 8 (Fla. App. 1969) *cert. dismissed,* 238 So. 2d 422 (Fla. 1970) ; *Hollis v. First National Bank of Atlanta,* 117 Ga. App. 145, 159 S.E.2d 497 (1968) ; *Hopkins v. Sefton Fibre Can Co.,* 390 S.W.2d 907 (Mo. App. 1965) ; *Nary v. Parking Authority of the Town of Dover, supra;* and the cases therein cited. We do not think any useful purpose will be served by a discussion of them.

*Judgment affirmed.*
*Costs to be paid by the appellant.*