## SNIDER *v.* SENNEVILLE

[No. 106, September Term, 1972.]

*Decided January 4, 1973.*

*Motion for rehearing filed February 5, 1973; denied February 7, 1973.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Walter J. Murphy, Jr.,* for appellant.

*William N. Zifchak,* with whom were *Carr, Bonner, O'Connell, Kaplan, Thompson & Diuguid* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This appeal is from a judgment of the Circuit Court for Montgomery County (Moorman, J.) upon a jury verdict for appellee (defendant below) on appellant's claim arising from personal injuries.

The injuries were sustained in appellant's apartment when she tripped over a tool box belonging to appellee. The latter, a furniture repairman, had arrived to mend certain furniture which had been recently damaged, and brought with him a tool box weighing thirty-five or forty pounds which, according to appellant, he placed on the living room floor. Appellee, on the other hand, stated that he placed it near the dining room table. Although appellant had noticed the metal box when appellee en-

tered, she testified she did not observe where it was placed until after her fall. The lighting was described as good.

In the course of the inspection conducted by appellee, it became necessary for a serving table in the dining room to be cleared in order for appellee to make some repairs. From the serving table, he picked up a tea service and walked towards the living room followed by appellant who was carrying a silver tray of approximately eighteen inches in width. As they proceeded in this fashion, she fell over the tool box.

Appellant's explanation for failing to notice the box appears in the following excerpts from her testimony:

"Q. How were you carrying that tray? A. I was carrying it in both hands.

"Q. Approximately waist high? A. Just about like that; yes.

\* \* \*

"Q. Now, when you came around the dining room table with the tray in your hands, did you know where the tool chest was? A. No.

"Q. Were you looking for it? A. No.

\* \* \*

"Q. . . . . . To your knowledge, Mrs. Snider, was there anything that prevented you from seeing that box? A. The tray I was holding is one thing that was keeping me from seeing it.

"Q. Was there anything else? A. Only Mr. Sennerville [sic] walking ahead of me.

"Q. Did that interfere with your view of the box or weren't you looking? A. I could not see the box. I did not know it was there. I am the only one living in that house, sir.

"Q. Is it correct to say that you did not look in the area of the floor as you walked? A. I did not look down at the floor. That floor is always clear. I did not expect it to be there."

This appeal centers upon two aspects of the trial judge's charge to the jury. The first deals with the following portion of the instructions which appellant contends should not have been given, and to which she noted an exception:

> "I instruct you also that it is the law that *failure of a person to keep a proper lookout is negligence,* and the duty of maintaining a proper lookout requires not only the physical act of looking with reasonable care but reasonably prudent action to avoid the danger which a proper lookout would disclose.

> "If a person looks and does not see what a reasonably prudent person would have seen under the circumstances in time to take the necessary precautions to avoid danger, that person is just as guilty of negligence as if he fails to maintain a proper lookout." (emphasis added)

After Judge Moorman completed his instructions to the jury and counsel were called to the bench to present their objections, counsel for appellant, after noting his exceptions to what we have just quoted, requested "that the jury be instructed that there is no duty to anticipate that another person will do something negligently." The refusal to grant that request gives rise to the second assignment of error.

In challenging the trial court's instruction to the jury "that failure . . . to keep a proper lookout is negligence," appellant makes the rather convincing argument that this amounted to the direction of a verdict since, as we have noted, she readily conceded that she did not look. The question thus posited is whether, under the circumstances, she was contributorily negligent as a matter of law in failing to look at the floor area where the tool box lay. We think she was not.

In contending that she was not under an absolute duty to look, appellant likens her situation at the time of the

incident to that of the store customer in *Hutzler Bros. v. Taylor,* 247 Md. 228, 230 A. 2d 663 (1967), where Judge McWilliams, writing for this Court, distinguished that case from a collection of authorities which, in part, are relied upon here by appellee. The import of our decision in *Hutzler* is that one may be injured while walking in a familiar area as a result of a defect which, although it may have existed for some time, might not previously have been apparent to him; and yet, not be deemed contributorily negligent as a matter of law.

This is readily distinguishable from the factual situation in *Tyler v. Martin's Dairy, Inc.,* 227 Md. 189, 175 A. 2d 587 (1961), cited by appellee, where we said, "[t]o walk blindly or unlooking in a strange environment, when there is no need to do so, is to be negligent as a matter of law." We have followed the rule there enunciated in subsequent cases which presented similar factual situations. *Mershon v. Gino's, Inc.,* 261 Md. 350, 276 A. 2d 191 (1971) ; *Bennett v. District Hgts. Apts.,* 252 Md. 655, 251 A. 2d 215 (1969). However, we think the holding in *Tyler* is clearly inapposite to the case at bar.

Nor is *Rooney v. Statewide Plumbing,* 265 Md. 559, 290 A. 2d 496 (1972), heavily relied upon by appellee, controlling here, although its factual situation appears to be superficially similar. There, workmen were installing a new furnace in a home and were noisily engaged some twelve feet from the homeowner who did not look into the area where they were working. Later that day, while there was still adequate lighting, she entered a hallway where the workmen had removed a grate and fell through an uncovered opening in the floor. She admitted that she had heard noise caused by the removal of the grate. In those circumstances, we said:

> "Therefore, when, in broad daylight, she walked into that room and then proceeded to walk, without looking, into the hole left by the removal

of that grate, reasonable minds would not differ in declaring that she was negligent as a matter of law." 265 Md. at 565.

We regard *Rooney* as distinguishable. There, she heard the noise caused by the removal of the grate, and since she knew where it had been located, she was under a duty to look. Furthermore, there was nothing to prevent her from seeing the hole as she approached it. In the instant case, appellant did not know where the tool box had been placed and said she was unable to see it due to the tray she was carrying and because appellee was walking in front of her.

In *So. Md. Electric v. Blanchard,* 239 Md. 481, 212 A. 2d 301 (1965), also relied upon by appellee, we did say that:

"It is a fundamental principle of negligence law that a person must use his Providence-given senses to avoid injury to himself. This has been recognized since time immemorial." 239 Md. at 485.

However, the facts there, as in *Sugar v. Traub,* 233 Md. 320, 196 A. 2d 869 (1964) and *Long v. Joestlein,* 193 Md. 211, 66 A. 2d 407 (1949), both of which were also cited by appellee, may readily be distinguished from the case at bar.

As appellant indicated by her testimony, she was in the familiar surroundings of her own dwelling, where she would logically be aware of and thus avoid any dangerous obstacle which might have been present. Hence, the duty which we impose on persons who enter strange surroundings manifestly does not apply. In the circumstances which prevailed here, reasonable minds could differ on whether one exercising due care for her own safety should have been looking for the tool box at the particular place where appellee had placed it. While *Hutzler* is not precisely on point, nevertheless, we think that by analogy, it applies here.

In sum, we think that whether appellant, in the exercise of reasonable care for her own safety, should have looked, and thus should have seen the tool box, was for the jury to decide. Thus, it was error for the trial judge to instruct the jury, in effect, that her admitted failure to look constituted negligence on her part. *Cf. Ensor v. Ortman,* 243 Md. 81, 220 A. 2d 82 (1966).

Since, in view of our holding, the case must be retried, we deemed it appropriate to consider the second assignment of error urged by appellant. As appellee correctly observes, the requested instruction "that there is no duty to anticipate that another person will do something negligent," for which appellant relies upon *Sanders v. Williams,* 209 Md. 149, 120 A. 2d 397 (1956), is an incomplete statement of the principle on which it is bottomed; thus, the refusal to grant the instruction was not error. What we there said was:

> "Absent actual or constructive knowledge to the contrary, one may act on the assumption that he will not be exposed to danger that will come only by the breach of duty which another owes him. He is not bound to anticipate negligent acts or omissions on the part of others unless, under the circumstances, an ordinarily prudent person would know, or should know, that it was not safe to make the assumption of due care on the part of the other person." 209 Md. at 152.

Should appellant, upon the retrial of this case, renew her request, the instruction should be framed so as to state the complete principle of law if applicable to the facts then in evidence. Indeed, the trial judge may find it appropriate to instruct the jury on the correlative principle of foreseeability within the framework of primary negligence.

*Judgment reversed; remanded for a new trial; appellee to pay costs.*