MAYOR AND COUNCIL OF HAGERSTOWN *v.*
HARVEY B. HERTZLER.

[No. 22, October Term, 1934.]

*Decided November 21st, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Ellsworth R. Roulette,* for the appellant.

*John E. Wagaman,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appeal is from a judgment against the City of Hagerstown for loss by the plaintiff of the services of his wife, alleged to have been caused by her tripping over a guy wire supporting a small tree in a grass strip between a paved sidewalk and the curb along one of the city streets.

So much of the testimony describing the site refers to plats and a picture, none of which are before the court on appeal, that it cannot be restated with assurance of correctness in all details, but so far as can be seen the facts are these. Wilson Boulevard was a wide highway not completed in its full length at the time of the accident. Where completed, as it was at the place of the accident, there was a concrete sidewalk four feet wide, bordered by a grass strip three feet six inches wide. On the north side of the boulevard, about thirty-three feet east of the corner of Pine Street, two young trees were supported by guy wires, extending, in the instance with which this case is concerned, from a point four or five feet up on the tree to a stake in the grass strip from six to ten feet from the tree trunk. There was testimony on behalf of the plaintiff that this tree had been so supported for about two months. Some of the witnesses had not noticed the wire in passing it. It was light wire, described by one witness as about the size of baling wire. It is not testified that the city had planted the tree, and it is to be inferred that it had not. At a distance of a hundred and fifty feet farther to the east, there was a space over which the concrete walk had not yet been laid. Mrs. Hertzler, on the night of October 21st, 1932, walked west on the north side of the boulevard to call on a friend on Pine Street, the intersecting street mentioned, to the

west. Her testimony was that when she came to the section where no walk had been laid, she stepped out to the driveway and continued walking in the street until, having had her attention attracted by an automobile parked at the curb, she saw that there was a paved walk there, and turned to use it. This was where the tree was guyed up. As she stepped on the grass strip, she said, she did not see the wire, and fell over it to her injury. There were lights nearby, but the wire could not be seen.

The principal question is that of the legal sufficiency of this evidence to prove negligence of the city in the performance of its duty to keep the highway safe for pedestrians. There is no question of the right of a municipality to set off part of the highway, such as a grass strip, for any restricted use it may decide upon, or for no use at all. These grass strips are common, their use for trees, telephone poles, fire plugs, and other purposes equally common, and pedestrians must expect to encounter such customary objects in the strips, and must look to themselves for their protection against injury from them. But must they expect and guard against wires supporting young trees?

Many cases have had to deal with similar questions. See review in a note, 59 *A. L. R.* 387. In one case, *McDonald v. St. Paul,* 82 Minn. 308, 84 N. W. 1022, a pedestrian tripped over a guy wire to a tree planted by an abutting owner at a street corner, and, in affirming a judgment against the city, the court remarked that if the accident had occurred between block lines instead of at the street corner, the case against the city would not have been so clearly one for the jury. In the opinion of one member of that court, it clearly would not have been one for the jury. And see *Corcoran v. New Haven,* 108 Conn. 63, 142 A. 569. But this is not the view taken generally.

The strips are parts of the highway, although the rights and duties with respect to them are not the same as those with respect to the paved ways, laid out for traveling. Foot passengers are not excluded from them,

unless, indeed, by some effectual withdrawal of the strips from use, either by fences or notices. When the strips are left open to them, the pedestrians are, as stated, bound to protect themselves against any of the regular uses and obstructions, and comparative roughness of the ground; protection may be required of the municipality only beyond that point. It is obliged to exercise care for the safety of the pedestrians against dangers, not from the customary, permissible uses or conditions, but dangers of a kind that would not be expected by foot passengers, dangers in the nature of traps. If the municipality should know of such dangers, or in the exercise of due care ought to know of them, it would be answerable to foot passengers who, though exercising due care on their own part, do not perceive the dangers. So it has been held that the municipality must exercise care to protect against injury from unexpected obstructions, such as pipes or piles of stone on the ground, holes, and wires fencing off seeded portions. *Corcoran v. New Haven*, 108 Conn. 63, 142 A. 569; *Jablonski v. Bay City*, 248 Mich. 306, 226 N. W. 865; *Reed v. Philadelphia*, 311 Pa. 283, 166 A. 891; *Barnesville v. Ward*, 85 Ohio St. 1, 96 N. E. 937; *Townley v. Huntington*, 68 W. Va. 574, 70 S. E. 368.

There is force in the argument that guy wires are normal incidents of newly planted trees, to be avoided by pedestrians, and also in the argument that a greater burden of care than can be met by the municipality may be imposed by a requirement that their officers and agents take notice of possibilities of injury from such ordinary uses anywhere about their streets. But, in the opinion of this court, the question whether guy wires are such normal incidents is a question which is not so clearly beyond controversy as to be answered by the court; it should be referred to the jury, as it was in this case. This is the view of nearly all of the other courts whose decisions have been cited. And as to the burden of care imposed, it can only be answered that, once it is decided that the danger is to be classed among the dangers not

to be expected in highways or, in other words, dangers in the nature of traps, settled law imposes the burden. Municipalities have been held bound with notice of many particular defects no more conspicuous than the wire described here. *Annapolis v. Stallings*, 125 Md. 343, 349, 93 A. 974.

The appellant contends that in this case the danger was not one which would ordinarily come to the attention of officers exercising due care, and that therefore negligence could be found only in failure to remove it after actual notice, and that, evidence of actual notice being lacking, the court should have directed a verdict for the defendant for that reason. *Annapolis v. Stallings, supra*. The objection applies to a refusal of a request for that direction, and also to the giving of an instruction to the jury, on a second prayer of the plaintiff, which referred the question of constructive notice to the decision of the jury. It seems true that the wire, considered alone, might easily escape the notice of diligent officers; and a condition unnoticed by neighbors, or by the plaintiff, might for the same reasons be unnoticed by officers. But there was a stake in the ground, from six to ten feet from the tree, and, presumably, the usual protected attachment of the wire to the tree, and the court could not say that the whole arrangement might ordinarily have escaped the attention of officers exercising proper care. The question was for the jury.

The trial court granted the plaintiff's prayers for instructions in accordance with the views here expressed, and refused the defendant's to the contrary. To the plaintiff's prayers the court added an explanatory instruction, and the defendant has objected that the combined instructions thus given the jury were likely to confuse them, but this court sees no substantial likelihood of the confusion. The rulings on the prayers appear to have been correct.

*Judgment affirmed, with costs.*