HALEY ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 20, October Term, 1956.]

(Two Appeals In One Record)

*Decided December 5, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and HENDERSON, J., Chief Judge of the Fourth Judicial Circuit, specially assigned.

*I. Sewell Lambdin* for appellant, Iva Lee Haley.

*Marvin Braiterman,* with whom was *Sheldon H. Braiterman* on the brief, for appellant, Elizabeth Kappes.

*F. Clifford Hane, Assistant City Solicitor of Baltimore,* with whom were *Thomas N. Biddison, City Solicitor,* and *Edwin Harlan, Deputy City Solicitor,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from summary judgments in favor of the appellee-defendant, the Mayor and City Council of Baltimore, a municipal corporation. The appellants-plaintiffs, Iva Lee Haley and Elizabeth Kappes, were each injured, in separate accidents, while descending a column of concrete steps located in Preston Gardens, a public park in the City of Baltimore. These steps were a part of a concrete walk connecting two intersections: one formed by St. Paul Street, Franklin Street and the Orleans Street Viaduct on the upper levels, and the second formed by St. Paul Place and Franklin Street on the lower level. This concrete walk, including the column of steps where the accidents occurred, traverses a grass plot lying between and running parallel with St. Paul Street and St. Paul Place and furnishes the most direct access .between the aforesaid intersections of public highways. Preston Gardens, including the walkway and steps where the accidents occurred, is (and since 1919 has been) under the supervision of what is now the Department of Recreation and Parks, an agency of the appellee; and the maintenance and improvement of the steps in question are (and since 1922 have been) undertaken by the same Department.

Funds derived from a Harbor Loan constituted about 90% of the moneys used for the acquisition of the land now comprised in Preston Gardens and, apparently for the original construction of the Gardens. See *City of Baltimore v. Williams,* 129 Md. 290, 99 A. 362, and a stipulation in the present case that "Harbor Loan Funds were used in the construction of Preston Gardens * * *." In *City of Baltimore v. Williams,* just cited, the expenditure of Harbor Loan Funds for

the widening of St. Paul Street and for the acquisition by the City of all the land lying between Lexington Street on the south, Hamilton Street on the north, St. Paul Street on the west and what is now St. Paul Place (then Courtland Street) on the east, and for the establishment of squares or open spaces in such part of the area as was not needed for highway purposes, was held proper. This decision was reached under a statute (Acts of 1910, Ch. 485) authorizing a plan of comprehensive improvement of the Patapsco River waterfront, since St. Paul Street gave access to and from a large part of the harbor of Baltimore. The use of the land not needed for actual highways for squares or open spaces was incidental, but not necessary, to the widening of St. Paul Street. (It was largely a practical solution to a problem created by the steepness of the hill and the comparative narrowness of the space between St. Paul and Courtland Streets. See the opinion of Judge Carroll T. Bond in the Circuit Court No. 2 of Baltimore City contained in the record in *City of Baltimore v. Williams, supra.*)

The walkway and steps where the accidents in question took place are so located as to constitute a straight and direct connecting link between the sidewalks on Franklin Street east and west of St. Paul Place and St. Paul Street. Each of the appellants, quite independently of the other and at different times, was injured while using the concrete steps in the course of travelling from the upper level to the lower level.

The sole question before the lower court and this Court is whether, under the facts before us, the maintenance of these concrete steps leading through Preston Gardens, a public park, is a governmental function or a corporate function. There is no dispute as to the fact that these steps where the accidents occurred are completely within Preston Gardens. The mere physical location of the passageway within the park does not of itself decide the function. The use of a particular facility is a determining factor.

The law of this State is well established that a municipal corporation is not liable in a civil action for any default or neglect in the performance of a purely governmental function, such as the maintenance and management of a public park

for recreational purposes. *City of Baltimore v. State, Use of Blueford,* 173 Md. 267, 195 A. 571, and cases therein cited; *City of Baltimore v. State, Use of Ahrens,* 168 Md. 619, 179 A. 169; *Thomas v. Prince George's County,* 200 Md. 554, 92 A. 2d 452. On the other hand, the keeping of public highways and walkways under its management and control in a reasonably safe condition is a corporate function of a municipality and it is therefore answerable in damages for failing to exercise such function. *City of Baltimore v. Eagers,* 167 Md. 128, 136, 173 A. 56.

In the case at bar the appellants were using the steps as part of the public highway in order to travel between points which were outside the park and not for recreational purposes. It is stipulated that numerous persons use these steps and walkways to travel from St. Paul Street to St. Paul Place and *vice versa.* In such circumstances we think that the steps constitute a public highway of the City, that it is immaterial which department of the City is charged with their maintenance, and that *City of Baltimore v. Eagers, supra,* is controlling.

In the *Eagers Case,* in passing upon the facts wherein the plaintiff was killed while walking along a street in a public square, by reason of the carelessness of employees of the defendant engaged in removing a large tree from the square, this Court said (at 167 Md. 134): "* * * The duty of the municipality did not depend upon the work being done by those servants who had been employed by the park commissioner, because the servants of the department of public works would be none the less the servants of the municipality in this service. Consequently, the liability of the municipal corporation to civil action, for misconduct or neglect on its part or on the part of its officers and servants in respect to the manner of performing corporate duties causing injury to a person, does not here hinge upon what servant of the municipality was guilty of the wrongful or negligent act, but upon what was the nature of the act."

Later in the same case (at 167 Md. 136), the Court continued: "* * * In the case at bar the problem concerns not only the beauty, utility, and safe enjoyment by the public of

the square but also the safety of the use of a public way through a square of a municipal corporation. There is no question that, by the great weight of authority, the rule of law is that it is a private proprietary obligation of municipal corporations to keep their streets and public ways reasonably safe for travel in the ordinary manner, and to prevent and remove a nuisance affecting the use and safety of these public ways. * * *"

See also *McQuillen, Municipal Corporations,* 3rd Ed., Vol. 19, Sec. 54.29; *Nelson v. City of Duluth,* 172 Minn. 76, 214 N. W. 774; *City of Louisville v. Pirtle,* 297 Ky. 553, 180 S. W. 2d 303; 39 *Am. Jur., Parks, Squares and Playgrounds,* Sec. 44, p. 839; Annotation, 142 A. L. R. 1340, 1381. Cf. *Birckhead v. City of Baltimore,* 174 Md. 32, 197 A. 615, in which this Court did not pass upon the defense asserting that the construction and maintenance of a highway through a park was a governmental function, but held the facts alleged in the amended declaration insufficient to show any negligence on the part of the City. In that case an accident had occurred on a highway through a park, which served as a connecting link between two major highways outside the park.

The decision of the trial judge was based solely upon the ground that the City was entitled to judgment because the maintenance and operation of the park involved the exercise of a governmental function for which the City could not be held liable. Since we think that the steps in question constituted a part of a highway for the negligent maintenance of which the City may be held liable, the judgments for the City will be reversed; and because there seems to be a dispute as to the existence of negligence on the part of the City, each of the cases will be remanded for a new trial.

*Judgments reversed, with costs of these appeals to the appellants, and cases remanded for new trials.*