*Anne Arundel County, Maryland v. Fratantuono*, No. 1, September Term, 2017. Opinion by Fader, J.

**GOVERNMENTAL IMMUNITY – MUNICIPALITIES – PUBLIC WAYS**

Local governments generally enjoy immunity only when performing governmental, as opposed to proprietary, functions. By precedent, the maintenance of streets, sidewalks, footways, and the areas contiguous to them in a reasonably safe condition are treated as proprietary functions for which a local government has no immunity.

**GOVERNMENTAL IMMUNITY – MUNICIPALITIES – PUBLIC WAYS**

County was not entitled to governmental immunity from suit arising from its negligence in maintaining a grassy strip set contiguous to both the public road and the public sidewalk where the area in question was used by pedestrians for travel and was not located in a public park or other similar area.

**JURY INSTRUCTIONS – CONTRIBUTORY NEGLIGENCE**

The evidence did not support the County's requested jury instruction on contributory negligence where the County presented no evidence to suggest that the plaintiff would have observed anything amiss had she been looking at the defective water meter lid that caused her injuries.

**JURY INSTRUCTIONS – CONTRIBUTORY NEGLIGENCE**

The evidence did not support the County's requested jury instruction based on the plaintiff's alleged violation of Md. Code Ann., Transp. § 21-506(a), which prohibits pedestrians from walking "along and on" a road when a sidewalk is provided where there was no evidence that the plaintiff was walking on the road when she was injured.

**INCONSISTENT VERDICTS – MULTIPLE THEORIES OF NEGLIGENCE**

The jury's verdicts finding the County not liable under a theory of common law negligence but liable under a theory of negligence based on violation of a regulation were not irreconcilably inconsistent in light of the instructions given to the jury.

Circuit Court for Anne Arundel County
Case No. C-02-CV-15-003663

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1

September Term, 2017

_____

ANNE ARUNDEL COUNTY, MARYLAND

v.

JANINE FRATANTUONO

_____

Wright,
Fader,
Eyler, James R.
      (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Fader, J.

_____

Filed: November 1, 2018

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document " authentic.



Suzanne C. Johnson, Acting Clerk

We are asked to determine whether a county enjoys governmental immunity from a negligence claim for injury occurring in an area that is (1) contiguous with and adjacent to, but not on, a paved public street or walkway, (2) used as a walkway by pedestrians even though there is a paved sidewalk on the opposite side of the street, and (3) not in a public park, swimming pool, or similar area. A jury awarded more than $50,000 in damages to the appellee, Janine Fratantuono, for injuries she suffered as a result of the negligence of the appellant, Anne Arundel County, in failing to follow its own requirements relating to the installation and maintenance of a water meter lid. We conclude that the County was not entitled to governmental immunity under these circumstances.

The County also argues that the circuit court erred in denying its request for a contributory negligence jury instruction and by entering judgment on an inconsistent jury verdict. We hold that the circuit court correctly concluded that the evidence did not support a contributory negligence instruction and that the jury verdict was not inconsistent. We therefore affirm.

## BACKGROUND

At the center of this dispute is a water meter lid that the County installed and maintained in a grassy strip of land near the southwest corner of the intersection of Maple Road and Camp Meade Road in Linthicum. The grassy strip sits on the south side of Maple Road between the road and a property fence and stretches between the property's driveway and an area of sidewalk that begins at the corner. The lid is near the edge of the strip that abuts the beginning of the sidewalk. At trial, Ms. Fratantuono introduced the following pictures of (1) the lid and the area immediately around it:



and (2) the relevant area of the grassy strip as depicted on Google Street View:



On the morning of December 27, 2014, Ms. Fratantuono and her then-husband were out for a walk on the sidewalk on the north side of Maple Road, west of the intersection

with Camp Meade Road, when they saw joggers coming in the opposite direction. To avoid a logjam, the couple crossed to the south side of Maple Road. Although there was a sidewalk on the south side of Maple at the point where they first crossed, eventually it ended. The Fratantuonos continued walking onto the grassy strip.

Ms. Fratantuono testified that she had walked on this same grassy strip at least 50 times before. This time, her right foot stepped on the lid, which flipped up and open. Her left foot and leg then fell approximately 30 inches into the newly-opened hole, causing her to sustain injuries.

Ms. Fratantuono filed this lawsuit against Anne Arundel County, alleging that her injuries resulted from the County's negligence and negligent supervision of its employees with respect to the construction, installation, and maintenance of the water meter lid. Before trial, the County filed a motion for summary judgment in which it unsuccessfully argued that Ms. Fratantuono's claim was barred by governmental immunity. At trial, Ms. Fratantuono introduced evidence that the County, through its Department of Public Works, had ignored the requirements of its own Design Manual regarding the selection and installation of the water meter lid. A jury entered judgment in favor of Ms. Fratantuono and awarded her damages of $50,806.00. The court denied the County's motion for judgment notwithstanding the verdict. This appeal followed.

## DISCUSSION

The County challenges the circuit court's denial of its motion for summary judgment, its refusal to give a requested jury instruction, and its denial of a motion for judgment notwithstanding the verdict. We review denial of a motion for summary

3

judgment and denial of a judgment notwithstanding the verdict for legal correctness. *Sage Title Grp., LLC v. Roman*, 455 Md. 188, 201 (2017); *Dashiell v. Meeks*, 396 Md. 149, 163 (2006). We review the decision not to give a requested jury instruction for abuse of discretion. *Woolridge v. Abrishami*, 233 Md. App. 278, 305 (2017).

**I.  THE COUNTY IS NOT PROTECTED FROM MS. FRATANTUONO'S CLAIMS BY GOVERNMENTAL IMMUNITY.**

The County argues that the circuit court erred in denying its motion for summary judgment on the basis of governmental immunity. Specifically, the County contends that although it does not enjoy immunity from claims arising out of its "maintenance of streets, walkways and areas contiguous to them used by the public to travel from one point to another," the strip of grass in which Ms. Fratantuono fell does not fit that description. Ms. Fratantuono responds that her claim falls within this exception because the strip of grass where the water meter lid was located was contiguous to the public street as well as the sidewalk and it was an area where she and others regularly walked.

Although the State enjoys absolute immunity from claims except to the extent it consents otherwise, counties generally enjoy immunity only when performing governmental, as opposed to proprietary, functions. *Rios v. Montgomery County*, 386 Md. 104, 124 (2005); *Austin v. Mayor and City Council of Balt.*, 286 Md. 51, 53 (1979); *Zilichikhis v. Montgomery County*, 223 Md. App. 158, 192 (2015). The distinction between when a local government acts in a governmental versus a proprietary capacity has been developed through case law. Relevant to our purposes here, our appellate courts have long recognized a distinction between the maintenance of public parks and swimming pools,

4

which has been treated as a governmental function, and the government's obligation "to maintain its streets, as well as the sidewalks, footways and the areas contiguous to them, in a reasonably safe condition," which has been treated as proprietary. *Higgins v. City of Rockville*, 86 Md. App. 670, 679 (1991).[1] This is sometimes known as the "public ways" exception to governmental immunity.

Four cases the Court of Appeals decided in the 1930s established the framework for the governmental immunity analysis our appellate courts continue to apply in this context. In *Mayor & City Council of Balt. v. Eagers*, the Court addressed a claim arising out of the death of a pedestrian who was walking down the center of a walkway when he was struck with a rotten branch that came from a tree being felled by a City work crew 20 feet away. 167 Md. 128, 129 (1934). The Court observed that the City had a statutory obligation to keep the walkways safe, including the obligation to remove trees "with reasonable care and

---

[1] Although our appellate courts have long recognized and applied this distinction, they have sometimes questioned its logic. In *Mayor & City Council of Baltimore City v. State, use of Blueford*, the Court of Appeals lamented the absence of "any logical distinction between the governmental character" of maintenance of public highways as compared with public parks. 173 Md. 267, 272 (1937). The Court nonetheless considered the distinction too well established to abandon. *Id.* at 273. In dissent from the Court's refusal to revisit this rule in *Austin*, Judge Eldridge stated that he could "think of no good reason whatsoever why the operation of a park, swimming pool or camp should be deemed 'governmental,' . . . whereas the construction and maintenance of public streets, bridges and sewers, or the removal of garbage, or the supplying of water to homes, should all be classified as 'proprietary' . . . ." 286 Md. at 72. The Court's majority chose to maintain the distinction. *Id.* at 63. This Court has similarly labeled "the placement of the maintenance of streets, highways, and walkways in the proprietary column rather than in the governmental column" as "bizarre," but nonetheless applied the distinction as "the indisputable and long-settled law of this state." *Higgins v. City of Rockville*, 86 Md. App. 670, 678 (1991). We join in applying this well-established, though perhaps not logically consistent, distinction.

skill, so as to do no injury to those on the sidewalks while exercising due care and caution according to the circumstances." *Id.* at 134. Whether the City could be sued, however, depended on whether the nature of its act was governmental or proprietary. The Court found that "the great weight of authority" established "that it is a private proprietary obligation of municipal corporations to keep their streets and public ways reasonably safe for travel in the ordinary manner, and to prevent and remove a nuisance affecting the use and safety of these public ways." *Id.* at 136. Moreover, the Court concluded, that duty "extends to the land immediately contiguous to these public ways." *Id.* Thus, although removal of a tree from an area outside of a public way would normally be a governmental function for which a local government would have immunity, that is not the case where negligence during that removal injures someone who is on a public way. *Id.* at 137.

Later that same year, the Court decided *Mayor & Council of Hagerstown v. Hertzler*, 167 Md. 518 (1934). Hagerstown had set aside a three-and-a-half-foot-wide grass strip in between a highway and a paved sidewalk. *Id.* at 519. The City then planted trees on the grass strip which, while young, were supported by "guy wires" extending out several feet from the trees. *Id.* The plaintiff's wife tripped on one of the guy wires and fell while she was walking from a portion of the road to the sidewalk. *Id.* at 519-20. Although observing that the duty of the City was lesser, and that of the pedestrian greater, on such a strip of grass than on a paved walkway, the Court held that the City was nonetheless "obliged to exercise care for the safety of the pedestrians against dangers, not from the customary, permissible uses or conditions, but dangers of a kind that would not be expected by foot passengers, dangers in the nature of traps." *Id.* at 521. Such dangers include "pipes

6

or piles of stone on the ground, holes, and wires fencing off seeded portions." *Id.* Concluding that the guy wires could be found to constitute such a danger, the Court affirmed the judgment against the City. *Id.* at 522.

The following year, the Court was presented with a claim from the parents of a ten-year-old boy who had drowned while swimming in a natural stream at Gwynns Falls Park. *Mayor & City Council of Balt. v. State, use of Ahrens*, 168 Md. 619, 620 (1935). The plaintiffs presented evidence that the area in which the boy drowned was dangerous, that three others had drowned there in the prior five years, and that the City had nonetheless posted no warnings and taken no steps to make the area safer. *Id.* at 622. In rejecting the plaintiffs' claims that these facts gave rise to an actionable claim, the Court noted the distinction confirmed in *Eagers* between the proprietary function of "the maintenance of streets and highways" and "the exercise of various governmental or political functions necessarily incident to municipal government." *Id.* at 625. Based on that distinction and important public policy concerns—the Court feared that imposing liability on local governments for negligence in maintaining parks would discourage the expansion and development of such parks—the Court held that "that the maintenance, control, and operation of Gwynns Falls Park . . . is a governmental duty, discretionary in its nature, performed in its political and governmental capacity as an agency of the state." *Id.* at 628. The City thus enjoyed immunity for actions related to its maintenance of the park. *Id*.

Two years later, the Court decided *Blueford*, which involved the drowning of an 11-year-old girl in a swimming pool maintained by the City of Baltimore. 173 Md. at 268. The Court began by recognizing the general rule that a local government "is not liable in a

7

civil action for any default or neglect in the performance of a purely governmental function," as well as the exception that applied to the entity's "failure to keep the public highways under its management and control in a reasonably safe condition." *Id.* at 273. Observing that it was already established that maintenance of a park was a governmental function, the Court held that maintaining a swimming pool must be as well. *Id.* at 274. Although it acknowledged that there was no universally-accepted rule for determining whether a function was governmental or proprietary, the Court concluded that a function is governmental where it "is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest." *Id.* at 276. Maintaining a public swimming pool, the Court concluded, meets that standard. *Id.* at 274.

The Court introduced a twist on the "public way" exception to governmental immunity in *Haley v. Mayor & City Council of Baltimore*, 211 Md. 269 (1956). There, in separate incidents, two plaintiffs were injured while walking on steps within an urban park that was maintained by the City of Baltimore. *Id.* at 271. Although the walkway at issue was within the park, the Court determined that its function, and not its location, was dispositive. *Id.* at 272-73. Because the steps were part of a public path connecting two pedestrian sidewalks, and that path was frequently used "in order to travel between points which were outside the park and not for recreational purposes," the Court held that "the steps constitute[d] a public highway of the City." *Id.* at 273. The Court thus reversed the trial court's conclusion that Baltimore City enjoyed immunity from the claims. *Id.* at 274.

Three years after *Haley*, the Court decided *Pierce v. City of Baltimore*, 220 Md. 286 (1959). When Mr. Pierce alighted from a bus at a city bus stop where there was no sidewalk, he, like other passengers, had been required to walk "along an unpaved strip of ground" parallel to the road to get to a sidewalk. *Id.* at 288. While doing so, he caught his foot under a metal plate covering a drain, fell, and sustained damages. *Id.* Summarizing the state of the law, the Court concluded that where "the municipality has actual or constructive notice" of a defect that "is not to be expected and is substantial . . . generally recovery is allowed, even though the area involved is one not actually or formally dedicated to pedestrian use." *Id.* at 291.[2] There, the evidence was such that a "jury properly could have concluded that the City had violated a duty owed Pierce to have anticipated that pedestrians would" walk on the unpaved strip rather than "in the street with their backs to traffic," and so that one of them "might injure himself on the drain or the plate." *Id.* Although the City's duty of care with respect to the unpaved strip was less than it would have been on a paved surface, the City still was required to make it "reasonably safe for persons having occasion to walk upon [it]." *Id.* at 292.

In *Higgins*, this Court considered whether the City of Rockville had immunity from a claim for damages a pedestrian sustained while walking from a City-maintained parking lot to a City-maintained athletic field along a walkway the City had created by chaining off a portion of the parking lot. 86 Md. App. at 674. We held that because the City had set

---

[2] The requirement that the local government have notice of the defect before liability may be imposed is longstanding. *See, e.g.*, *Keen v. City of Havre de Grace*, 93 Md. 34, 39 (1901) ("Before the city can be made liable in any case, it must be shown that it had notice of the bad condition of the street."). Neither party raises notice as an issue on appeal.

9

aside a portion of the lot as a walkway, maintenance of that portion of the lot became a proprietary function under the "public way" exception and the City thus could not claim governmental immunity. *Id.* at 686.

The most recent addition to Maryland's delineation of the scope of the public ways exception to governmental immunity was *Mayor & City Council of Baltimore v. Whalen*, 395 Md. 154 (2006). There, a blind plaintiff who was on a walk on a public right-of-way located within a public park veered slightly off the right-of-way and fell into an uncovered utility hole. *Id.* at 157. The City argued that it enjoyed governmental immunity because the accident occurred in a public park, the maintenance of which case law had long since established as governmental in nature. *Id.* at 162. The plaintiff, by contrast, argued that this fell within the exception for the "maintenance of streets, public ways, and the areas contiguous and adjacent to them . . . ." *Id.* Placing dispositive importance on the fact that the plaintiff was inside the boundaries of the public park at the time of the accident, the Court found *Ahrens* and its progeny controlling. *Id.* at 164. Although *Eagers* and cases on which it relied had established that dangers that *originate* from within public parks could give rise to liability of a local government if they "create actual hazards on the public way," that principle was limited to dangers that "come from outside the boundaries of the public way onto the public way . . . ." *Id.* at 167. In *Whalen*, the danger stayed entirely within the boundaries of the public park and never ventured onto the public way itself. As a result, the City was immune from suit.

These cases establish the following general principles where a pedestrian is injured by a local government's negligence:

10

1.      If the injury occurs on a paved public way (i.e., a paved public street or sidewalk), there is no governmental immunity. *Eagers*, 167 Md. at 136; *Haley*, 211 Md. at 272-73. That is true regardless of where the local government's negligence originates. *Eagers*, 167 Md. at 136;

2.      If the injury occurs within the boundaries of a public park, swimming pool, or similar area where the local government's maintenance obligation is governmental in nature, governmental immunity applies, *Blueford*, 173 Md. at 274; *Ahrens*, 168 Md. at 628, unless the injury occurs on a paved public way through the park, *Haley*, 211 Md. at 272-73; *Eagers*, 167 Md. at 136; *Higgins*, 86 Md. App. at 685. That is true even if the area within the park, pool, or similar area is contiguous and adjacent to a public way. *Whalen*, 395 Md. at 157-58;

3.      If the injury occurs on an unpaved area that is (a) outside of a public park, swimming pool, or similar area, (b) contiguous and adjacent to a public way, and (c) where the government should expect that pedestrians might walk, governmental immunity does not apply. *Pierce*, 220 Md. at 290, 292; *Hertzler*, 167 Md. at 520-21. In that situation, however, the standard of care owed by the government is less than that owed in conjunction with a paved public way. *Pierce*, 220 Md. at 292; *Hertzler*, 167 Md. at 521.

The County argues that this case is controlled by *Whalen* because the area in which the injury occurred in both cases was adjacent to, and not on, a public way. But the County ignores that the dispositive factor in *Whalen* was that the injury occurred within the boundaries of a public park, the maintenance of which is well-established as a governmental function. Here, by contrast, the injury occurred on a grassy strip that is neither a paved public way nor within the boundaries of a public park or similar area.[3] *Whalen* is therefore not dispositive.

_____

[3] Notably, to reach its expansive interpretation of *Whalen* the County felt the need to argue that the Court of Appeals in that case "overruled *Pierce* and its progeny" by holding "that the immunities that would normally apply outside of the roadway exception kick in when the traveler leaves the safe path and is injured." Thus, the County contends, the Court of Appeals has now tightened the public ways exception so that it no longer reaches areas that are contiguous and adjacent to paved roads and sidewalks under any

11

Ms. Fratantuono argues that this case is controlled by *Pierce* because the area in which the injury occurred in both cases was adjacent to a public way and the government had reason to know that pedestrians traveled there. But in *Pierce*, the government—by placing a bus stop in an area with no paved walkway—had basically left pedestrians with no choice but to walk on the strip where the injury occurred. Here, by contrast, the County had placed a sidewalk on the other side of the street, which Ms. Fratantuono chose to leave. We thus find *Pierce* distinguishable as well.

Although this case is not on all fours with any of the precedents discussed above, we think it is most similar to *Hertzler*. There, as here, the injury occurred in an unpaved area that the government had neither set aside for walking nor blocked with any barriers to pedestrian traffic. 167 Md. at 519. There, as here, the injured party was traversing the unpaved area to get from one paved area to another. *Id.* at 519-20. And there, as here, the evidence established that the area was contiguous and adjacent to a sidewalk where pedestrian traffic was expected. *Id.* at 520-21. Here, that evidence included (1) Ms. Fratantuono's testimony that she had walked that path at least 50 times and had observed others walking it as well and (2) pictures and descriptions showing that the strip fell between two paved sidewalk segments that were not otherwise connected.

---

circumstances. The County provides no authority for its assertion that the Court overruled *Pierce*, nor did the Court expressly state an intent to do so in *Whalen* or any other decision. When the Court of Appeals "intends to overrule a case it tends to do so explicitly." *Moore v. State*, 412 Md. 635, 657 (2010). Absent compelling evidence to the contrary, we will not assume that the Court overruled its precedent by implication.

In *Hertzler*, the Court of Appeals observed that the local government's duties with respect to the unpaved area were less than they would be in a paved area, but that the government nonetheless was obligated to protect pedestrians from "dangers of a kind that would not be expected by foot passengers, dangers in the nature of traps." *Id.* at 521. The Court in *Pierce* similarly noted that a local government's duty of care with respect to an unpaved area was to make it "reasonably safe for persons having occasion to walk upon [it]." 220 Md. at 292. Here, the jury concluded that the County's failure to maintain the water meter lid in a safe condition allowed it to flip without any warning or notice, which in turn allowed Ms. Fratantuono's leg to fall into the hole and resulted in her injuries. This danger constitutes just the sort of trap that renders such an unpaved area not reasonably safe for pedestrian use.

In sum, Anne Arundel County did not have governmental immunity for this injury occurring in a grassy strip that was set contiguous with and adjacent to both the public road and the public sidewalk. The circuit court thus did not err in denying the County's motion for summary judgment on that ground.

## II. THE CIRCUIT COURT DID NOT ERR IN DECLINING TO INSTRUCT THE JURY AS TO CONTRIBUTORY NEGLIGENCE.

The County's second contention on appeal is that the circuit court erred in declining to give jury instructions (1) that Ms. Fratantuono's violation of a statute that prohibits pedestrians from walking on a roadway when a sidewalk is provided constituted evidence of contributory negligence; and (2) on contributory negligence generally. Neither contention has merit.

13

We review whether a trial court abused its discretion in declining to offer a jury instruction using "well-defined standards." *Cost v. State*, 417 Md. 360, 368 (2010). A trial court is required to give a proposed jury instruction when: (1) the requested instruction is a correct statement of the law; (2) the evidence supports giving the instruction; and (3) the substance of the instruction is not otherwise fairly covered by instructions that are given. *Preston v. State*, 444 Md. 67, 81-82 (2015).

The County contends that by (1) crossing Maple Road at a point where there was no crosswalk and then (2) walking on the grassy strip rather than the sidewalk that was on the opposite side of Maple Road, Ms. Fratantuono violated Maryland law that "when a sidewalk is present, a pedestrian may not walk along an adjacent road." As support for that legal proposition, the County cites only § 21-506(a) of the Transportation Article, which states: "Where a sidewalk is provided, a pedestrian may not walk along *and on* an adjacent roadway." Md. Code Ann., Transp. § 21-506(a) (emphasis added). That statute, which is designed to prevent pedestrians from walking in streets, is inapposite here, where Ms. Fratantuono was walking along, but not on, the adjacent roadway at the time of her injury.[4]

We also agree with the trial court that there is no evidence in the record that could have generated a general contributory negligence instruction. Ms. Fratantuono testified that she was looking ahead while she was walking. Even if the County is correct that she

---

[4] The County's claim that Ms. Fratantuono violated the statute by crossing Maple Road where there was no crosswalk suffers from even greater deficiencies, including that there was no sidewalk "provided" for the purpose of crossing the road (thus rendering the statute inapposite), the injury did not occur while she was crossing the road, and there was no evidence presented to link her injury to the fact that she got to the south side of Maple Road by jaywalking.

14

was somehow negligent in looking ahead instead of looking down, the County presented no evidence that she would have observed anything amiss had she been looking down. The evidence was that the water meter lid was installed in 2011 and had not subsequently been opened. The record contains no indication that anything about the appearance of the lid would have suggested that it would flip if disturbed, nor has the County pointed us to any authority for the proposition that it is negligent for a pedestrian to step on a water meter lid while walking. Because the evidence did not support either of the County's proposed instructions, the trial court did not err in refusing to give them.

## III.    THE JURY VERDICT WAS NOT INCONSISTENT.

The County's final assertion of error is that the jury's verdict should be set aside as fundamentally inconsistent. We will only overturn a jury's verdict on grounds of inconsistency if it is "irreconcilably inconsistent." *Bacon & Assocs., Inc. v. Rolly Tasker Sails (Thailand) Co.*, 154 Md. App. 617, 627 (2004). This is not such a situation.

The questions and answers at issue are:

Question 1: Has Plaintiff proved, by a preponderance of evidence, the elements of negligence, as they were described to you by the court, against Anne Arundel County with respect to the construction, installation, maintenance and replacement of the Nicor Water Meter Lid at issue?

Answer: No.

Question 2: Has Plaintiff proved, by a preponderance of evidence, the elements of negligence based upon violation of a regulation, as they were described to you by the court, against Anne Arundel County with respect to the construction, installation, maintenance and replacement of the Nicor Water Meter Lid at issue?

Answer: Yes.

15

Question 3: Has Plaintiff proved, by a preponderance of evidence, the elements of negligent supervision, as they were described to you by the court, against Anne Arundel County with the respect to supervising and training of the employees in the construction, installation, maintenance and replacement of the Nicor Water Meter Lid at issue?

Answer: Yes.

The County argues that the answers to questions 1 and 2 are inconsistent because both questions asked the jury whether the County was answerable in ordinary negligence to Ms. Fratantuono with respect to the construction, installation, maintenance, and replacement of the lid. Although the County acknowledges that Ms. Fratantuono pursued three different theories of negligence—common law, violation of regulation, and failure to supervise—it claims that the jury's negative answer to the first question required a judgment in the County's favor.

We find no merit in this argument. The court instructed the jury on each of Ms. Fratantuono's theories of negligence. It initially instructed the jury on the common law elements of a negligence claim, telling them that "[t]he definition of negligence is doing something that a person using reasonable care would not do or not doing something that a reasonable person using reasonable care would do." After being reminded that it had not read a separate instruction regarding Ms. Fratantuono's theory that the County was negligent in failing to follow the requirements of its own design manual, the Court gave this instruction:

> Entirely separate and distinct from common law negligence, the violation of a regulation, in this case the Anne Arundel County design manual, which is a cause of the Plaintiff's injuries or damages, is evidence of negligence. To establish negligence based upon the violation of a regulation, all that a plaintiff must show is that the violation of a regulation designed to protect a

16

specific class of persons, which includes the Plaintiff, and that the cause – and that this caused the injury complained of. Plaintiff need not show that the Defendant had knowledge that it violated the regulation.[5]

The court followed with an instruction regarding negligent supervision, telling the jury that the elements were the same as the elements of common law negligence for breach of "the duty to properly and effectively supervise, train its employees tasked with constructing, installing, maintaining, and replacing the subject water meter lid in accordance with the Anne Arundel County's design manual and construction details."

On appeal, the County does not challenge the verdict sheet or the instructions given to the jury. Instead, the County's challenge is limited to a claim that the verdict is inconsistent. We disagree. In light of the instructions the court provided, the jury's answers made clear its conclusion that the County was negligent, but only because it had violated the requirements of its own design manual. In other words, but for the evidence that the County had violated the requirements of the manual, the jury would have found for the County. Because that evidence was presented, the jury found otherwise. The circuit court thus did not err in refusing to vacate the jury's verdict.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[5] Although the County objected to giving this instruction, it does not raise that issue on appeal and so we do not address it.

17