*Audrey Creighton v. Montgomery County*, No. 0999, September Term, 2020.  Opinion by Kenney, J.

**MUNICIPAL CORPORATIONS – TORTS – DEFECTS OR OBSTRUCTIONS IN STREETS AND OTHER PUBLIC WAYS – PROPERTY ADJACENT TO STREET – GOVERNMENTAL IMMUNITY**

A county is not subject to liability for harm caused to property owners who own land adjacent to a public roadway when the County uses salt to clear the road of snow and ice and its use harms the property owner's land.  Maintenance of a public way is a proprietary function, but the public ways exception, which allows for users of a roadway to sue for personal injury, does not extend to property damage as a result of a county's maintenance obligations.  And although the general maintenance of public ways is a proprietary function, snow and ice removal plans and operations remain discretionary planning and policy decisions protected by governmental immunity.

**MUNICIPAL CORPORATIONS – TORTS – DEFECTS OR OBSTRUCTIONS IN STREETS AND OTHER PUBLIC WAYS – PROPERTY ADJACENT TO STREET – STATUTORY IMMUNITY**

1912 Md. Laws, ch. 790, section 464, grants counties immunity to "properly drain" public roadways without liability to abutting owners for injuries resulting from such drainage.  The right to "properly drain" a road is the right to be able to do what is necessary from an engineering and construction standpoint to remove liquid from the road in a way that is suitable or appropriate for the gradual removal of liquid from the roadway for safe travel by the users of the roadway.  Consequently, statutory immunity protects a local government from liability to abutting landowners complaining about property damage from the draining of the roadways.

Circuit Court for Montgomery County
Case No. 472866

_____

AUDREY CREIGHTON

v.

MONTGOMERY COUNTY

_____

Berger,
Ripken,
Kenney, James A., III
(Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Kenney, J.

_____

Filed: March 31, 2022

*Tang, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Maryland Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On October 3, 2019, appellant, Audrey Creighton, sued appellee, Montgomery County (the "County"), in the Circuit Court for Montgomery County. Creighton alleged that the runoff from the improper salting of roads had contaminated her well. An amended complaint was filed on July 27, 2020. On August 12, 2020, the County filed a Motion to Dismiss based on governmental and statutory immunity. On October 20, 2020, the circuit court granted the County's motion and dismissed the amended complaint, with prejudice, on both grounds.

In her timely appeal, Ms. Creighton presents two questions,[1] which we have condensed into one:

> Is Montgomery County immune from suit for damages caused by the use of salt to clear snow and ice from its roadways based on common law governmental immunity or statutory immunity under Montgomery County Code section 49-5 or 1912 Md. Laws, ch. 790, section 464?

For the following reasons, we affirm the decision of the circuit court.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

The County owns and maintains roads throughout the County, including Peach Tree Road. Ms. Creighton's property abuts Peach Tree Road. She alleges that, in January 2017,

---

[1] Ms. Creighton's questions presented are: "I. Is Montgomery County immune from suit for damages caused by its maintenance of the roadways based on the doctrine of common law governmental immunity?;" and "II. Is Montgomery County immune from suit for damages caused by flows of water from its roadways pursuant to Montgomery County Code section 49-5 or pursuant to 1912 Md. Laws, ch., 790, sec. 464?"

[2] This opinion was originally filed unreported on February 1, 2022. The County filed a Motion to Report Opinion. That motion was granted and this opinion, with some nonsubstantive edits, replaces it.

a test of her well water revealed heightened levels of sodium chloride (salt) and other minerals. She claims that the level of salt in her well water was caused by the County's negligent use of salt "in the manner and amount used" to clear the road of snow and ice. More particularly, she asserts that the County "changed the nature and character of the drainage and runoff from Peach Tree Road on to [Ms. Creighton's] real property from naturally occurring freshwater to not naturally occurring salt water." Because the water from her well became unsafe to drink, she had to abandon that well and put in a new one.

A hearing on the County's motion to dismiss the first complaint was held on June 29, 2020. With respect to common law governmental immunity, the hearing court stated that the ultimate question was whether "the function of salting the road is a governmental function or a proprietary function." If it is a proprietary function, a "user of the roadway" would be able to recover for "some level of personal injury" for negligent maintenance under the public ways exception to governmental immunity, but, according to the court, "[t]hat's not what we have in this case," because Ms. Creighton was not injured using the road. As to statutory immunity, the hearing court found that Ms. Creighton had not alleged improper drainage or a change in character of the water in her complaint. And that, in the absence of an allegation of improper drainage, statutory immunity would shield the County from liability to an abutting owner. The court dismissed the first complaint without prejudice, and Ms. Creighton filed an amended complaint on July 27, 2020.

The County moved to dismiss the amended complaint and a hearing on that motion was held on October 19, 2020. At that hearing, the court concluded that "salting the

2

roadway" is a governmental function rather than a proprietary function and that governmental immunity applied. Additionally, the court found that the allegations in the amended complaint did not change the statutory immunity analysis. Recognizing Ms. Creighton's position—that the runoff from the road at issue was not a "naturally occurring" substance—the court stated that what was being drained from the road, "whether it was saltwater or not," was still water. Therefore, it found that statutory immunity also applied and dismissed the amended complaint with prejudice. Other facts may be added in the discussion of the issues presented.

## DISCUSSION

*Governmental Immunity*

*Standard of Review*

We review a motion to dismiss de novo. *Cochran v. Griffith Energy Services, Inc.*, 426 Md. 134, 139 (2012). Our review is not limited to the reasons given by the trial court or the reasons argued by the parties, and we may affirm or reverse on any ground shown by the record. *Parks v. Alpharma*, 421 Md. 59, 65 (2011).

*Contentions*

Ms. Creighton contends that the County should not be shielded by governmental immunity for improperly salting the road, or, in her words, the "negligent use of sodium chloride on Peach Tree Road, as part of its snow removal program." Citing *Higgins v. City of Rockville*, 86 Md. App. 670, 678 (1991), she argues that "it has long been held that a

3

municipality is not immune from a negligence action arising out of its public streets and highways," and that it is "indisputable and [the] long-settled law of this state" that "maintenance of streets, highways, and walkways" is a proprietary function.

The County counters that "public safety is a well-established governmental function" and that the decisions "to use salt on County roads during a snowstorm and how much of that substance to apply to a particular roadway certainly are matters of governmental planning and decision making" that are governmental in nature. Therefore it is protected by governmental immunity. But even if such decisions were proprietary in nature, the County, citing *Godwin v. County Comm'rs of St. Mary's County*, 256 Md. 326, 336 (1970), argues that the public ways exception to governmental immunity is limited to situations involving "construction or maintenance of the county roads proximately causing injuries to those using the roads." It does not extend liability to abutting landowners.

*Analysis*

We address first whether the County's use of salt to clear a road of snow and ice is a proprietary or governmental function. A governmental function is one that is "sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest." *Mayor and City Council of Baltimore v. Blueford*, 173 Md. 267, 276 (1937). That said, maintenance of the roads has been inexplicably but consistently held to be a proprietary function. *See Higgins*, 86 Md. App. at 678-80 (citing *Mayor and City Council of Baltimore v. Marriot*, 9 Md. 160, 176

4

(1856); *Mayor and City Council of Baltimore v. Walker*, 98 Md. 637, 644 (1904); *Baltimore v. Eagers*, 167 Md. 128, 136 (1934); *Pierce v. City of Baltimore*, 220 Md. 286, 290 (1959)). "The exemption of this particular function"—maintenance of the roadways— "from the benefits of governmental immunity, logical or illogical, seems destined to remain with us for the foreseeable future." *Id.* at 680.

In *Anne Arundel County v. Fratantuono*, 239 Md. App. 126, 133-39 (2018), a case involving "a pedestrian . . . injured by a local government's negligence," this Court distilled from our public ways jurisprudence the following:

1. If the injury occurs on a paved public way (i.e., a paved public street or sidewalk), there is no governmental immunity. That is true regardless of where the local government's negligence originates.
2. If the injury occurs within the boundaries of a public park, swimming pool, or similar area where the local government's maintenance obligation is governmental in nature, governmental immunity applies, unless the injury occurs on a paved public way through the park. That is true even if the area within the park, pool, or similar area is contiguous and adjacent to a public way.
3. If the injury occurs on an unpaved area that is (a) outside of a public park, swimming pool, or similar area, (b) contiguous and adjacent to a public way, and (c) where the government should expect that pedestrians might walk, governmental immunity does not apply. In that situation, however, the standard of care owed by the government is less than that owed in conjunction with a paved public way.

*Id.* at 139 (citations omitted).

The public ways exception allows a *user* of the public way to recover from the local government when the *user is injured while traveling on that public way*. And although the duty to maintain the roadways in a reasonably safe condition has been extended to areas contiguous to public ways, liability has been extended only to actual users of the public way for its intended purpose. *See, e.g.*, *Pierce v. City of Baltimore*, 220 Md. 286, 290

5

(1959) ("[A] municipality has a duty to maintain streets, sidewalks, and footways, and the areas contiguous to them, in a reasonably safe condition."); *Eagers*, 167 Md. 128, 137 ("The duty to keep the street and footways of the municipality in a safe condition for public *travel*, and to prevent and remove a nuisance affecting the *use and safety of these public ways* extends to the land immediately contiguous to these public ways" for the protection of "a traveler while walking along the street in the exercise of reasonable care."). *Compare Haley v. Mayor & City Council of Baltimore*, 211 Md. 269 (1956) (holding city liable when two pedestrians were injured while walking on steps inside a park); *Pierce*, 220 Md. 286 (holding city liable when a pedestrian was injured on a metal plate covering a drain while walking on an unpaved walkway to get to a sidewalk); *Higgins*, 86 Md. App. at 678 (holding city liable when a pedestrian was injured by a hazard while walking from a city-maintained parking lot to a city-maintained athletic field along a path created by the city); *Eagers*, 167 Md. 128 (1934) (holding city liable when a pedestrian was struck and killed by a branch while walking on a path within a park); *with Mayor & City Council of Baltimore v. State, use of Ahrens*, 168 Md. 19 (1935) (holding city immune from suit when a boy died swimming in a naturally occurring stream at Gwynns Falls Park); *Mayor & City Council of Baltimore v. Whalen*, 395 Md. 154 (2006) (holding city immune from suit when a blind pedestrian veered off the walkway and fell into an uncovered utility hole).

In our view, maintenance of a public way is a proprietary function for the safety of its users. To "maintain" a roadway is to "keep [it] in existence" or to "keep [it] in due

6

condition, operation, or force." Webster's Desk Dictionary 274 (1996).[3] In other words, the maintenance goal is to protect the operational integrity of the roadway for its intended purpose of providing users of the roadway reasonably safe travel. On the other hand, we are persuaded that snow and ice removal plans and how and when to remove snow and ice during seasonal weather events remain discretionary planning and policy decisions protected by governmental immunity.[4] But even if such decisions were proprietary, the public ways exception would extend liability only to those injured using the roadway and not to abutting property owners such as Ms. Creighton. Her claim would still be barred by governmental immunity.

### *Statutory Immunity*

### *Standard of Review*

Whether the County has immunity under section 49-5 of the County Code or 1912 Md. Laws, ch. 790, section 464, are questions of law reviewed de novo. *Wheeling v. Selene Finance LP*, 473 Md. 356, 373 (2021).

### *Contentions*

---

[3] "Maintain," as a verb, means "to keep in existence or continuance" or "to provide for the upkeep of." Webster's Tenth Collegiate Dictionary 700 (2000). "Maintenance" is "the act of maintaining" and "the upkeep of property or equipment." *Id.*

[4] That does not mean that environmental concerns are not to be considered in making such decisions. But weighing and balancing competing public interests is a governmental function.

Circling back on her argument that road maintenance is a proprietary function, Ms. Creighton contends that the County improperly granted itself immunity under section 49-5 of the County Code and that the statutory immunity provided by 1912 Md. Laws, ch. 790, section 464, does not protect the County because using salt as it did was not properly draining the road. More specifically, she argues that what the County is draining from the roadway had been changed "from fresh water to water contaminated by salt, which in turn[] contaminate[d] water wells located on property abutting the road."

The County contends that both the General Assembly and the Montgomery County Council "have made clear that, once a road has been dedicated to public use, the County has the right to drain the road without liability to the abutting landowner," and that section 49-5 of the County Code is not a grant of immunity. It argues that section 49-5 simply provides that whenever a road is dedicated to the County for the use of the public, the grant "must include the right to drain the road without liability to the abutting landowner." According to the County, it is "clear on the face of the statute that drainage includes the flow of water, including melted water," and that the "removal of snow and ice, which reverts to water" is part of the "right to drain."

*Analysis*

In interpreting statutes and ordinances, the primary goal is "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision." *Dep't of Health & Mental Hygiene v. Kelly*, 397 Md. 399, 419-20 (2007); *see Foley v. Hovnanian at Kent Island, LLC*, 410 Md. 128, 152 (2009). The search for legislative intent

8

begins with the plain language of the statute or ordinance. *Barbre v. Pope*, 402 Md. 157, 172 (2007). When the language "is clear and unambiguous, we need not look beyond [its] provisions and our analysis ends." *Id.* at 173. But when the language is subject to more than one reasonable interpretation, "it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose." *Id.* (citing *Kelly*, 397 Md. at 419-20).

According to the County, and Ms. Creighton does not contend otherwise, the dedication of the applicable section of Peach Tree Road took place in 1963, prior to the adoption of section 49-5 in 1965, which the County indicates was a modification of 1912 Md. Laws, ch. 790, sec. 464. Therefore, it appears that the dedication of the section of Peach Tree Road at issue in this case falls under 1912 Md. Laws, ch. 790, sec. 464. But section 49-5 has its roots in 1912 Md. Laws, ch. 790, sec. 464, and both use substantively the same language in regard to road dedications by "private grants," including the right at all times to "properly drain the road without liability . . . to abutting owners" for resulting injuries. Under either, the result would be the same.

Section 49-5 of the Montgomery County Code, titled, "Right to drain dedicated roads without liability to abutting owners," states:

> If any road is dedicated to the use of the public by a private grant, the grant must include the right at all times *to properly drain the road without liability of the County to any abutting owner for any resulting injury.*

Mont. Co. Code § 49-5 (emphasis added). The 1912 statute states:

9

> And in all cases where roads are hereafter dedicated to the use of the public by private grant, such grants shall be taken to carry with them the right at all times to *properly drain such highways without liability to abutting owners for injuries occasioned in consequence thereof.*

1912 Md. Laws, ch. 790, § 464 (emphasis added). Although Ms. Creighton argues that the adoption of section 49-5 was the County conferring immunity upon itself, a plain reading of the provisions indicate that, in the case of private grants of a road to the public, it is the grantor of the roads, not the County, who grants the right "to properly drain" the road without liability to abutting owners for any resulting injury.

Ms. Creighton cites *Higgins* for the broad proposition that "a municipality is not immune from a negligence action arising out of its maintenance of its public streets and highways." As discussed above, *Higgins*, and other cases, where a municipality was found liable to *users* of a public right-of-way, do not extend liability for injuries to abutting property, and the code and statutory provisions expressly preclude liability to abutting owners when a local government exercises its right to properly drain the roads.

Ms. Creighton asserts that the County's use of salt to clear the road of the ice and snow is not "properly" draining the road. In fact, she concedes that she would "have no case" if just regular water was allowed to drain on her property," and that this is not a case of "increased flow of water on [her] property." She argues that salt water does not naturally occur, and that the County is changing freshwater to saltwater.

To support her argument, she cites *Battisto v. Perkins*, 210 Md. 542 (1956), which was a nuisance case between private citizens and did not involve governmental or statutory

10

immunity. At issue was the acceleration of the natural flow of rainwater carrying with it mud and debris from the defendant's grading and building activities. The Court of Appeals held that the upstream landowner's development activities resulted in an actionable, physical invasion of the plaintiff's property. *Id.* at 548. Ms. Creighton apparently views an accelerated flow of water carrying debris and mud to the normal flow of water draining from Peach Tree Road when the County uses salt on the road to clear it of snow and ice. The use of salt may cause the water to be saltier than if it melted naturally, but, as Ms. Creighton concedes, there is no increased flow of water onto her property. And, here, the grant of dedication of the road to the public carried with it a right to properly drain the road. As the hearing court observed, what is being drained remains water.

The parties have provided no legislative history and cited no cases interpreting what it means to "properly drain" a road. The County argues that its right to properly drain the road is coupled with its responsibility to maintain the road to keep it safe for travelers. We essentially agree. Looking at the plain language, "drain," as a verb, means to "(1) to draw off (liquid) gradually or completely, (2) to cause the gradual disappearance of, (3) to make gradually dry, (4) to carry away the surface water, and (5) to discharge surface or surplus water." Webster's Tenth Collegiate Dictionary 350 (2000). "Proper" means "marked by suitability, rightness, or appropriateness" or "in a thorough manner." *Id.* at 932. To the extent that there is any ambiguity, the context and the statutory purpose persuade us that the right "to properly drain" the road is the right to do what is "appropriate" or "suitable"

11

from an engineering and construction standpoint for the gradual removal of liquid from the roadway for safe traveling by the users of the roadway.[5] *Id.* at 932.

Here, there is no allegation that the use of salt to remove snow and ice increases, in any material way, the volume or rate of flow onto abutting properties. Ms. Creighton's claim rests solely on the salinity of the removed liquid. The statutory concern, however, is the ability of local governments to clear storm water, and, in the winter, melted snow and ice from the public roads to ensure safe travel. In short, Ms. Creighton's claim would also be barred by statutory immunity.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[5] We note that 1912 Maryland Laws, chapter 370, related to the funding of certain public roads, stated in regard to drainage in section 9, that the road grade should not exceed "more than seven percent," and that the construction of "culverts" could be required. And, that the provision immediately preceding section 464, which related to acquiring land by eminent domain, stated it was necessary to provide for "all proper and necessary drainage" of the road to be constructed.

12